686 N.W.2d 800 (2004)
262 Mich.App. 640
Tierra MILLER, Minor, by her Next Friend Sandra MILLER, Sandra Miller, individually, and William Miller, Plaintiffs-Appellee,
v.
Matthew Jones LORD and Bruce Barney, Defendants, and
Marie Kissinger, Kathy Tabiliewicz, and Battle Creek School District, Defendants-Appellants.
Docket No. 246448.
Court of Appeals of Michigan.
Submitted June 9, 2004, at Lansing.
Decided July 1, 2004, at 9:00 a.m.
Released for Publication September 15, 2004.
Law Offices of Scott E. Combs (by Scott E. Combs and Katrina A. Murrel-Orlowski), Novi, for the plaintiffs.
Foster, Swift, Collins & Smith, P.C. (by William R. Schulz), Lansing, for Marie Kissinger, Kathy Tabiliewicz, Bruce Barney, and the Battle Creek School District.
Before: FITZGERALD, P.J., and BANDSTRA and SCHUETTE, JJ.
*801 BANDSTRA, J.
Defendants Marie Kissinger, Kathy Tabiliewicz, and Battle Creek School District appeal as on leave granted the trial court's denial of their motion for summary disposition pursuant to MCR 2.116(C)(7) and (10). We reverse.
Plaintiffs Tierra Miller (by her next friend, Sandra Miller), Sandra Miller (individually), and William Miller brought this action for damages under common-law tort theories as well as under the Persons With Disabilities Civil Rights Act (PWDCRA), M.C.L. § 37.1101 et seq., relating to an alleged sexual assault of Tierra Miller by a fellow student, Matthew Lord, at Battle Creek High School. When Tierra was in the tenth grade, she was sent into the hallway by her teacher, defendant Marie Kissinger, for misbehaving. Another teacher, defendant Kathy Tabiliewicz, observed Tierra talking with Lord and inquired why the two students were not in class. Lord explained that Tierra was upset because she had been reprimanded by her teacher, and that he was trying to convince her to return to class. Tabiliewicz left the students in the hallway. Thereafter, Lord and Tierra went to the boys' bathroom where Lord allegedly sexually assaulted Tierra.
Plaintiffs filed suit against Lord, Kissinger, Tabiliewicz, Bruce Barney, the school principal, and the Battle Creek School District, alleging common-law tort claims for assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and gross negligence, as well as a statutory cause of action under the PWDCRA. The defendants other than Lord (hereinafter "defendants") moved for summary disposition under MCR 2.116(C)(7) and (10), arguing that governmental immunity precluded plaintiffs' claims, that no exception to governmental immunity applied, that plaintiffs' claim under the PWDCRA was precluded as a matter of law, and that there were no genuine issues of material fact.
Plaintiffs agreed to dismiss the common-law tort claims against defendants Barney and the school district, and the trial court dismissed those claims accordingly. Regarding the common-law tort claims remaining against defendants Kissinger and Tabiliewicz, the trial court found that there was enough evidence to allow a reasonable jury to conclude that they committed gross negligence that was the proximate cause of Tierra's injury. Regarding plaintiffs' claims against the school district under the PWDCRA, the trial court found that there was enough evidence to allow a reasonable jury to conclude that it failed to accommodate Tierra in violation of the act. The trial court denied defendants' motion for summary disposition, and we now review that ruling as on leave granted.
We review a trial court's grant or denial of summary disposition de novo. Spiek v. Dep't of Transportation, 456 Mich. 331, 337, 572 N.W.2d 201 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(7) tests whether a claim is "barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties." Wade v. Dep't of Corrections, 439 Mich. 158, 162, 483 N.W.2d 26 (1992). To survive a motion for summary disposition brought under MCR 2.116(C)(7), the plaintiff must allege facts warranting the application of an exception to governmental immunity. Smith v. Kowalski, 223 Mich.App. 610, 616, 567 N.W.2d 463 (1997).
A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim, and we consider the pleadings, together with any affidavits, depositions, admissions, or other documentary evidence submitted by the parties in a *802 light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. MCR 2.116(G)(2); Ritchie-Gamester v. City of Berkley, 461 Mich. 73, 76, 597 N.W.2d 517 (1999). The motion should be granted if the evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. MacDonald v. PKT, Inc., 464 Mich. 322, 332, 628 N.W.2d 33 (2001).
As employees of the school district, a governmental agency, defendants Kissinger and Tabiliewicz are entitled to governmental immunity if they were acting within the scope of their authority, were "engaged in the exercise or discharge of a governmental function," and their conduct did not "amount to gross negligence that is the proximate cause of the injury or damage." M.C.L. § 691.1407(2)(b) and (c). The parties do not dispute the applicability of the first two elements, but disagree on whether defendants' conduct amounted to gross negligence or could be considered the proximate cause of Tierra's injuries.
The governmental immunity statute was amended by 1986 P.A. 175 to require that a governmental employee's conduct be "the" proximate cause of an injury. M.C.L. § 691.1407(2)(c). Our Supreme Court concluded in Robinson v. Detroit, 462 Mich. 439, 462-463 n. 19, 613 N.W.2d 307 (2000), that the amended statute, as applied to governmental employees, "contemplates one cause," which it described as "the immediate efficient, direct cause preceding the injury." Here, the immediate, direct cause preceding Tierra's injuries was the alleged sexual assault by Lord. Therefore, the trial court erred in denying defendants' motion for summary disposition on the basis that there was a question of fact regarding whether defendants' conduct was the proximate cause of Tierra Miller's injuries.[1]
Defendant school district argues that the trial court erred in denying its motion for summary disposition because plaintiffs' claims under the PWDCRA are precluded by the Michigan special education act (MSEA), M.C.L. § 380.1701 et seq., which was enacted under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. We agree.
Under the IDEA states must fulfill certain conditions in order to receive federal assistance, including having a policy in effect "that assures all children with disabilities the right to a free appropriate public education," and developing a detailed plan implementing that policy. Jenkins v. Carney-Nadeau Pub. School, 201 Mich.App. 142, 143-144, 505 N.W.2d 893 (1993), quoting 20 U.S.C. § 1412(1). "Further, `[e]ach local educational agency ... will maintain records of the individualized education program [IEP] for each child with a disability, and such program shall be established, reviewed, and revised' at least annually." Id. at 144, 505 N.W.2d 893, quoting 20 U.S.C. § 1412(4). Additionally, "[u]nder the IDEA, states are required to provide an administrative appeals procedure for the review of decisions regarding the `identification, evaluation, ... educational placement, or the provision of free appropriate education.'" Id., quoting 20 U.S.C. § 1415(b)(1)(E). Michigan implemented the IDEA through the MSEA. Id. "Pursuant to the MSEA, regulations have been promulgated controlling the preparation, content, and appeal of IEPs." Id.
*803 Those regulations were followed here. The issue of how to address Tierra's misbehavior was discussed in the IEP meeting between school officials and Sandra Miller. Specifically, "time out of classroom" is listed as a consequence of inappropriate behavior in the "behavioral intervention plan" section of the IEP. Sandra Miller contends that at the IEP meeting, she and William Miller rejected the provision that allowed Tierra to be sent into the hallway for misbehaving. Sandra Miller claims that upon leaving the IEP meeting, she was under the impression that it had been agreed that Tierra would not be sent into the hallway for misbehaving. Following the IEP meeting, Sandra Miller received the written IEP, which provided that Tierra could be sent into the hallway for misbehavior. She refused to sign the document on that basis but did not pursue any appeal.
We turn our attention to two cases that rejected handicapper civil rights claims[2] in similar factual contexts. In Woolcott v. State Bd. of Ed., 134 Mich.App. 555, 557, 351 N.W.2d 601 (1984), the plaintiff was a hearing impaired public school student. For one semester, the school provided plaintiff a cued speech interpreter in the plaintiff's general education classes, but the following semester, the school decided not to provide this accommodation. A request was made by plaintiff's parents that the interpreter be returned, an IEP committee was organized by the school, and the IEP committee recommended the return of the service. Id. at 558, 351 N.W.2d 601. However, the chairman of the IEP committee and the special education supervisor vetoed this recommendation and the service was not provided. Id. at 559, 351 N.W.2d 601. Because of this, plaintiff was sent to a private school at her own expense. Id. Plaintiff filed a claim for damages and other relief against the school alleging, inter alia, violations of the special education act and the handicapper civil rights statute. Id. at 560, 351 N.W.2d 601.
This Court noted the contrast between the two statutes, one being a general civil rights act for the disabled and the other a statute regarding specific rules for education of persons with disabilities. Woolcott, supra at 563, 351 N.W.2d 601. This Court stated that "where there are two acts, one of which is special and particular and includes the matter in question, and the other of which is general, and which... would ... conflict with the special act, the special act must be viewed as an exception to the general." Id., quoting 21 Michigan Law & Practice, Statutes, § 99, pp 117-118. Accordingly, the plaintiff was limited to those remedies provided in the special education act, and her claim under the handicapper civil rights act was precluded. Id.
Similarly in Jenkins, supra, the plaintiff challenged the fact that the defendant school would not allow her to use her motorized wheelchair in the school building, that she was forced to walk up the stairs, and that she was assigned an aide even though she did not need one. Jenkins, supra at 143, 505 N.W.2d 893. The plaintiff brought a claim under the handicapper civil rights act. The school contended, however, that the complained-of conditions were required by the plaintiff's IEP and that therefore, in order to challenge them, the plaintiff was required to follow the procedures set forth in the MSEA. Id. Employing similar reasoning to that in Woolcott, supra, this Court held that the plaintiff could not circumvent the administrative procedures of the MSEA by filing suit under the handicapper civil *804 rights act. Id. at 146, 351 N.W.2d 601. Specifically, this Court affirmed the determination "that plaintiff was limited to the remedies provided by the MSEA and that her complaint failed to state a claim" under the handicapper civil rights act. Id.
Here, plaintiffs' theory is that the school failed to accommodate by ignoring Tierra's mother's request, as well as Tierra's need, that she not be placed alone in the hallway. As in both Jenkins and Woolcott, this particular issue was brought up, discussed, and resolved as part of Tierra's IEP. Specifically, in the section entitled "Behavioral Intervention Plan," as a consequence of inappropriate behaviors it lists "time out of classroom."
Because the challenged actions (or inactions) by defendants revolved around an issue dealt with in the IEP, both the holdings and reasoning in Jenkins and Woolcott require that plaintiffs' claim under the PWDCRA be precluded by the MSEA. As in Woolcott, that is the appropriate result even though plaintiffs seek monetary damages unavailable under the MSEA. The trial court was incorrect in denying defendants' motion for summary disposition.[3]
We reverse and remand for entry of summary disposition in favor of defendants. We do not retain jurisdiction.
NOTES
[1] Because defendants' conduct was not "the" proximate cause of Tierra Miller's injuries, defendants are not precluded from asserting governmental immunity, and we need not address whether a jury could have reasonably concluded that their actions constituted gross negligence.
[2] 1998 P.A. 20 changed the title of the act from the "Michigan handicappers civil rights act" to the "persons with disabilities civil rights act." M.C.L. § 37.1101.
[3] We need not consider whether plaintiff Tierra Miller's injuries here were "caused by" any alleged violation of the PWDCRA by the appellants, M.C.L. § 37.1606, rather than by Lord.