STATE OF MICHIGAN
COURT OF APPEALS

SYSTEMATIC RECYCLING, LLC,

        Plaintiff-Appellant,

v

FIFTH THIRD BANK and AMICUS
MANAGEMENT, INC.,

        Defendants-Appellees.

UNPUBLISHED
October 30, 2014

No. 313916
Wayne Circuit Court
LC No. 12-007442-CZ

FIFTH THIRD BANK,

        Plaintiff-Appellee,

and

AMICUS MANAGEMENT, INC., Receiver,

        Appellee,

v

ALLIANCE LEASING & RENTAL, LLC,
JAMES ROSENDALL, a/k/a JAMES
ROSENDALL, JR., KENT COMMERCE BANK,
and COMERICA BANK,

        Defendants,

and

SYSTEMATIC RECYCLING, LLC,

        Intervenor-Appellant,

and

DAVID LANCIAULT,

No. 314062
Wayne Circuit Court
LC No. 09-005122-CH

-1-

Intervenor.

Before: JANSEN, P.J., and SAAD and DONOFRIO, JJ.

PER CURIAM.

In Docket No. 313916, plaintiff Systematic Recycling, LLC ("Systematic") appeals by right the circuit court's order granting summary disposition in favor of defendants Fifth Third Bank ("Fifth Third") and Amicus Management, Inc. ("Amicus"). In Docket No. 314062, Systematic appeals as an intervening appellant the circuit court's order terminating the receivership and closing the case. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This appeal arises from a defaulted loan agreement that resulted in a receivership over real property and ultimately the eviction of Systematic from that property. On December 7, 2007, Fifth Third loaned Alliance Leasing & Rental, LLC ("Alliance") $2,520,300, evidenced by a promissory note made payable to Fifth Third. The promissory note was secured, in part, by a mortgage that Alliance had granted to Fifth Third on December 27, 2005, on real property located at 9125 West Jefferson, Detroit, Michigan ("the property"). The mortgage was subsequently recorded on January 20, 2006, with the Wayne County Register of Deeds. In May 2006, Systematic and James Rosendall ("Rosendall"), the owner and sole member of Alliance, allegedly entered into a five-year lease, the term of which was to expire on December 31, 2011. Systematic allegedly paid the entire rent, $262,203, between 2006 and 2008, and the lease included a right of first refusal. In 2005, Systematic applied for a conditional use permit in order to conduct a composting operation on the property. On April 26, 2006, Systematic was granted a conditional land use for the property, effective May 10, 2006. The conditional land use permit was conditioned upon entering into a "Host Community Agreement" with the city of Detroit's Environmental Affairs Department.

In January 2009, Rosendall, pleaded guilty to federal bribery conspiracy charges, admitting to bribing Detroit officials in order to win a sludge recycling contract. In February 2009, Alliance defaulted on the loan, and on March 4, 2009, Fifth Third commenced Wayne Circuit Case No. 09-005122-CH ("the 2009 case"), against Alliance, Rosendall, Kent Commerce Bank, and Comerica Bank seeking a money judgment in the amount of $2,583,604.94 against Rosendall and Alliance, the appointment of a receiver, and judicial foreclosure. Pursuant to the terms of the mortgage agreement, Alliance agreed and consented to the appointment of a receiver in the event of a default. On May 8, 2009, the circuit court entered an order granting Fifth Third's request for the appointment of a receiver, and appointed Amicus, by its President Daniel Yeomans, as receiver of the property. On September 28, 2009, as a result of Rosendall's and Alliance's failure to appear or otherwise answer Fifth Third's complaint, the circuit court entered a default judgment against Rosendall and Alliance and entered a money judgment in the amount of $2,612,575.88 in favor of Fifth Third.

On September 20, 2010, Amicus and David Lanciault ("Lanciault") entered into a purchase agreement for the sale of the property for $1,050,000, subject to the court's approval. The purchase agreement provided that Amicus would deliver possession of the property to Lanciault free from all claims of tenants, and any existing tenant would vacate the property before closing. Systematic failed to vacate the premises despite numerous letters sent by Amicus informing it that Amicus intended to sell the property. Amicus thereafter filed a motion to evict Systematic, later joined by Fifth Third, and Systematic was eventually granted the right to intervene. Systematic claimed that it had a valid five-year lease that lasted until December 2011, and alternatively, that the oral lease should be removed from the statute of frauds due to partial performance. After a hearing on the motion to evict, on December 16, 2010, the circuit court entered an order, which provided:

> IT IS HEREBY ORDERED that . . . the sale of the Receivership property is ordered pursuant and subject to the terms of the Purchase Agreement executed between Receiver and David Lanciault. The closing for the sale of the Receivership property shall occur on or before March 29, 2011, subject to David Lanciault's rights under the Purchase Agreement.

After the order was entered, the circuit court held several hearings on the motion to evict, including an evidentiary hearing to determine the validity of the alleged lease. The circuit court determined that there was not sufficient evidence of a written lease, and the statute of frauds barred enforcement of the lease. The circuit court further held that partial performance did not remove the alleged lease from the statute of frauds because the lease was for a period longer than one year. On May 11, 2011, the court entered an order granting the motion to evict Systematic from the property. On May 16, 2011, Systematic filed a motion for reconsideration. Meanwhile, the court approved the sale of the property on July 8, 2011, and the property was sold on August 12, 2011. The court denied Systematic's motion for reconsideration on August 16, 2011, and a corrected order was entered on November 9, 2011. Systematic filed an application for leave to appeal the order of eviction in this Court on November 30, 2011. On December 21, 2011, while the application for leave to appeal was pending, Systematic sought leave to sue Amicus in the circuit court.

Before the motion for leave to sue was decided, Systematic commenced Wayne Circuit Case No. 12-007442-CZ ("the 2012 case"), against Fifth Third and Amicus. Systematic's complaint in the 2012 case set forth claims for foreclosure of the construction lien (Count I), breach of contract (Count II), unjust enrichment (Count III), and account stated (Count IV). On July 20, 2012, in lieu of answering the complaint, Amicus filed a motion to dismiss and for summary disposition, asserting that the circuit court should dismiss the claims against it because Systematic had failed to obtain leave of the court before suing it as the receiver of the property. On July 30, 2012, in lieu of filing an answer, Fifth Third filed a motion for summary disposition as well, arguing that it was entitled to judgment as a matter of law because Systematic's allegations were factually and legally insufficient.

On August 16, 2012, this Court entered an order denying Systematic's application for leave to appeal the circuit court's order of eviction in the 2009 case. *Fifth Third Bank v Alliance Leasing & Rental LLC*, unpublished order of the Court of Appeals, entered August 16, 2012 (Docket No. 307369). On November 8, 2012, the circuit court held a hearing on the motions for

summary disposition in the 2012 case, and also considered Systematic's motion for leave to sue the receiver in the 2009 case. The circuit court denied the motion for leave to sue Amicus in the 2009 case, and granted summary disposition in favor of Fifth Third and Amicus in the 2012 case. The circuit court entered orders to this effect on November 27, 2012, and Systematic now appeals those orders in this consolidated appeal.

## II. DOCKET NO. 314062—JURISDICTION

Fifth Third and Amicus contend that this Court lacks jurisdiction over an appeal of right from the order of November 27, 2012, entered in the 2009 case because the order was not a final order as defined by MCR 7.202(6) and Systematic was not aggrieved by the order. We disagree.

Questions of law, such as statutory interpretation, court rule construction, and whether this Court has jurisdiction, are reviewed de novo on appeal. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). Actions taken after a money judgment is entered are considered proceedings supplementary to the judgment. See MCL 600.6104. With respect to proceedings supplementary to a judgment, MCR 2.621(H) provides that "[a] final order entered in a supplementary proceeding may be appealed in the usual manner." This Court has jurisdiction over an appeal of right filed by an aggrieved party from "[a] final judgment or final order of the circuit court . . . as defined in MCR 7.202(6). . . ." MCR 7.203(A)(1). Thus, in determining whether this Court has jurisdiction over an appeal of right in a supplementary proceeding, the order must be a final order of the circuit court, as defined by MCR 7.202(6), and the party must be aggrieved by that order.

Pursuant to MCR 7.202(6)(a)(*i*), a final order in a civil case is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order." In actions involving multiples claims or parties, an order adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action with respect to any of the claims or parties, and such an order is not appealable by right before entry of final judgment. MCR 2.604(A). However, in receivership and similar actions, the court has the discretion to direct that an order entered before adjudication of all claims and rights and liabilities of all the parties constitutes a final order, but only on an express determination that there is no just reason for delay. MCR 2.604(B).

In this case, the circuit court rejected Systematic's alleged leasehold interest in the property, and entered an order on May 11, 2011, granting the motion to evict Systematic. Following this order, Systematic filed a motion for reconsideration on May 16, 2011, and before the motion was decided, the court approved the sale of the property on July 8, 2011. The property was sold on August 12, 2011. On November 9, 2011, the circuit court entered a corrected order denying Systematic's motion for reconsideration. On December 21, 2011, Systematic filed a motion for leave to sue Amicus, as the receiver. This motion was not heard until November 8, 2012, after which time the court entered an order on November 27, 2012, concluding the receivership and closing the case.

In accordance with the language of MCR 7.202(6)(a)(*i*), the order of November 27, 2012, was the final order. The language of MCR 7.202(6)(a)(*i*) specifically provides that a final order

is the "first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." Although the order of May 11, 2011, adjudicated the possessory rights of Systematic, the receivership had not concluded and the rights and liabilities of all parties were not fully resolved. Systematic was still attempting to make a claim for damages, even after the court found that a valid lease did not exist. Moreover, the circuit court did not indicate that any of its previous orders should be treated as a final order. See MCR 6.204(B). Given that an order adjudicating fewer than all the claims of all the parties does not terminate the action with respect to any of the claims or parties, and such an order is not appealable by right before entry of the final order, we conclude that the order of November 27, 2012, is the final order under MCR 7.202(6)(a)(*i*).

We also conclude that Systematic was aggrieved by the order of November 27, 2012. See MCR 7.203(A). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *In re Critchell's Estate*, 361 Mich 432, 448; 105 NW2d 417 (1960). On December 16, 2010, the court entered an order, which provided:

> IT IS HEREBY ORDERED that . . . the sale of the Receivership property is ordered pursuant and subject to the terms of the Purchase Agreement executed between Receiver and David Lanciault. The closing for the sale of the Receivership property shall occur on or before March 29, 2011, subject to David Lanciault's rights under the Purchase Agreement.

All the parties' attorneys, including Systematic's attorney, approved the order "as to form [and] substance." The purchase agreement provided, in relevant part:

> Seller shall deliver possession of the Property to Buyer, together with all keys to the Property, free from all claims of tenants. Any existing tenant will vacate the property prior to closing.

Despite Fifth Third's and Amicus's contention that this order precluded Systematic from being an aggrieved party because it consented to the eviction and sale of the property, Systematic continued to have a pecuniary interest after this order was entered. Moreover, "[t]here is nothing in the record to suggest that approval of the disputed order 'as to form and content' signaled the [parties'] agreement with the trial judge's ruling." *Ahrenberg Mech Contracting, Inc v Howlett*, 451 Mich 74, 78; 545 NW2d 4 (1996). In fact, the subsequent proceedings suggest the opposite. The circuit court did not resolve the motion to evict Systematic until five months after the order was entered, after holding several hearings, including an evidentiary hearing on the issue of the validity of the alleged lease. The circuit court also entered an order expressly resolving the eviction issue, after which time Systematic timely filed a motion for reconsideration and an application for leave to appeal the order. The record does not support the proposition that Systematic stipulated or consented to being evicted. In addition, the order of November 27, 2012, is the only order entered after the court addressed the motion for leave to sue Amicus. Systematic continued to have some interest of a pecuniary nature in the outcome of the case up until that time, and was therefore aggrieved by the final order. See *In re Critchell's Estate*, 361 Mich at 448.

### III. DOCKET NO. 314062—VALIDITY OF THE LEASE

Systematic contends that the circuit court erred by granting the motion to evict because the five-year lease with Alliance was valid. We disagree.

"This Court reviews de novo questions of law such as whether the statute of frauds bars enforcement of a purported contract." *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995). As discussed earlier, this Court also reviews de novo questions of law such as statutory interpretation or court rule construction. *Chen*, 284 Mich App at 191.

Fifth Third and Amicus assert that an appeal of the motion to evict Systematic from the property is moot. An issue becomes moot where a subsequent event renders it impossible for this Court to fashion a remedy. *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003). Because Systematic admitted that any alleged lease expired on December 31, 2011, any claim to a possessory interest in the property is now moot, and this Court will not address any such contention. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). However, with respect to damages suffered as a result of a deprivation of a property interest, this issue is not moot. Although Systematic's alleged lease would have already ended, it was ordered to vacate the property before the purported lease was to expire. Consequently, a remedy can still be fashioned with respect to any claim for damages flowing from the alleged error in determining that the purported lease was invalid.

Even assuming the alleged lease was valid, Amicus had the authority to remove tenants and terminate any existing contracts affecting the property pursuant to the order appointing Amicus as the receiver of the property. Accordingly, any valid lease Systematic had with Alliance could be terminated and Systematic could be properly removed from the property. Therefore, it did not matter whether the lease was valid, and any purported damages for terminating this lease early were not attributable to Fifth Third or Amicus, but instead, to Alliance. As discussed in further detail later, any alleged damages due to expenses incurred and improvements made to the property were not done at the request of Fifth Third, and were inferior to Fifth Third's mortgage interest. Moreover, Amicus was the court appointed receiver and it must have acted in bad faith in order for Systematic to be entitled to relief because Amicus's possession of the property was tantamount to possession by the court itself. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 528; 730 NW2d 481 (2007); *In re Motion for Leave to Sue Receiver of Venus Plaza Shopping Ctr*, 228 Mich App 357, 361; 579 NW2d 99 (1998).

In any event, the circuit court properly held that the alleged lease was invalid and not enforceable. MCL 566.108 provides that "[e]very contract for the leasing for a longer period than 1 year . . . shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease . . . is to be made. . . ." The statute of frauds does not require the entire agreement be in writing, but instead, only requires that "a note or memorandum of the agreement" is in writing and signed, examples of which include a letter, account statement, draft or note, or check. MCL 566.132(1); *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Prod, Inc*, 265 Mich App 105, 111-113; 693 NW2d 394 (2005). The writing necessary to satisfy the statute of frauds may consist of a combination of writings. *Goslin v Goslin*, 369 Mich 372, 375-376; 120 NW2d 242 (1963). However, the writing being must also

be certain and definite with regard to the parties, property, consideration, premises, and time of performance. *McFadden v Imus*, 192 Mich App 629, 633; 481 NW2d 812 (1992).

In this case, Systematic offered as a memorandum of the agreement the application for a conditional land use grant, the composting facility registration form, and checks from Systematic made payable to Rosendall and Alliance. Rosendall signed both the application and registration forms, and on question 12 of the application, Systematic indicated that it "will rent or lease the property," and "have an option to purchase the property." However, Systematic did not attach a copy of the lease agreement, as requested by the application, and neither of these forms provided the amount of rent or length of the lease. Additionally, with respect to the checks, the last check made payable to Alliance was dated January 22, 2008, and the last check made payable to Rosendall was dated October 30, 2008. Moreover, only one of these checks had the word "rent" written on the memo line. Even assuming these checks did evidence a lease agreement between Alliance and Systematic, no payments were made after October 30, 2008, and nothing indicated that the lease lasted until December 2011, as alleged by Systematic. The writings submitted by Systematic failed to prove the existence of a written lease ending in December 2011.

Systematic also contends that the circuit court should have considered the "Memorandum of Lease," which it attached to its motion for reconsideration. MCR 2.119(F)(3) provides that "[t]he moving party must demonstrate palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." This writing provided the essential terms of the lease; however, it was signed five days after the order granting the motion to evict was entered, and pursuant to the terms of the order appointing the receiver, Rosendall signed this memorandum at a time when he could no longer contractually bind the property. It was improper for Systematic to present this new evidence as part of its motion for reconsideration. See MCR 2.119(F)(3); see also *Maiden v Rozwood*, 461 Mich 109, 126 n 9; 597 NW2d 817 (1999).

Systematic also contends that, even if the statute of frauds bars the enforcement of the alleged lease, part performance of the lease removed the lease from the statute of frauds. Despite this contention, the doctrine of part performance does not operate to remove a contract from the statute of frauds if it may not be performed within a year. *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 541; 473 NW2d 652 (1991). Because the alleged lease was for a term of five years and therefore could not be performed within one year, Systematic's claim fails. The circuit court did not err by granting the motion to evict Systematic from the property.

IV. DOCKET NO. 314062—MOTION FOR LEAVE TO SUE THE RECEIVER

Systematic next argues that the circuit court erred by denying its request for leave to file suit against Amicus. We disagree.

The grant or denial of leave to sue a court-appointed receiver is reviewed for an abuse of discretion. *Venus Plaza Shopping Ctr*, 228 Mich App at 359.

Under Michigan law, leave of court must be obtained before a party brings a lawsuit against a court-appointed receiver. *Venus Plaza Shopping Ctr*, 228 Mich App at 359; see also

*Citizens' Commercial & Sav Bank v Bay Circuit Judge*, 110 Mich 633, 634; 68 NW 649 (1896). In addition, the order appointing the receiver provided in relevant part:

>  10.1.  No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting a suit or action provided, however, that no prior Court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

>  10.2.  Except as otherwise provided by law, the Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, including those related to environmental conditions and issues, or amounts owed to any of Defendants' creditors because of its duties as Receiver.

>  10.3.  The Receiver and its employees, agents and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and /or material failure to comply with this Court's orders.

In order for a party to sue a receiver, the receiver must have acted with "an element of bad faith" during the receivership, and errors in business judgment are not actionable. *Venus Plaza Shopping Ctr*, 228 Mich App at 361.

The circuit court did not abuse its discretion by denying Systematic's motion for leave to sue Amicus because Systematic's assertions of bad faith were unsupported by the evidence. Any claim of bad faith deriving from the alleged lease is without merit because, as noted previously, the circuit court properly determined that a valid lease did not exist. Moreover, nothing in the record supports any allegation that Amicus demanded or ordered Systematic to incur any expenses relating to the property, or to make any of the purported improvements. The court fully approved Amicus's sale of the property, and Systematic therefore cannot establish that Amicus acted in bad faith when it offered the property for sale. In addition, Systematic's claims that Amicus acted in bad faith by conspiring with city of Detroit officials to revoke its conditional land use permit, and tortuously interfered with its prospective contractual obligations, are equally unsupported by the evidence. The circuit court entered a temporary restraining order on April 20, 2011, prohibiting Systematic from dumping or accumulating any additional compost at the property due to nuisance concerns and the expiration of the Host Community Agreement. Any allegation of conspiracy with the city is meritless, and any alleged attempt to tortuously interfere with contracts is undocumented. The circuit court did not abuse its discretion by denying Systematic's motion for leave to sue the receiver.

### V.  DOCKET NO. 313916—SUMMARY DISPOSITION

Systematic argues that the circuit court erred by granting summary disposition in favor of Amicus and Fifth Third in the 2012 case. We disagree.

## A. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). In reviewing a motion under MCR 2.116(C)(5), regarding whether a party lacks the capacity to sue, this Court considers the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *McHone v Sosnowski*, 239 Mich App 674, 676; 609 NW2d 844 (2000). A motion for summary disposition under MCR 2.116(C)(7) tests, among other things, whether the claim is barred because of immunity granted by law; the court must consider all documentary evidence submitted by the parties. *Miller ex rel Miller v Lord*, 262 Mich App 640, 643; 686 NW2d 800 (2004). A motion under MCR 2.116(C)(8) may not be supported with documentary evidence and tests the legal sufficiency of the claim as pleaded; all factual allegations and reasonable inferences supporting the claim are taken as true. *McHone*, 239 Mich App at 676. A motion under MCR 2.116(C)(8) should be granted "only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Under MCR 2.116(C)(10), we consider the affidavits, pleadings, admissions, depositions, and other documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Greene v AP Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006). A motion based on MCR 2.116(C)(10) is appropriately granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). We review de novo the circuit court's conclusions of law and equitable decisions. *Sweet Air Inv, Inc v Kenney*, 275 Mich App 492, 496; 739 NW2d 656 (2007).

## B. AMICUS'S MOTION FOR SUMMARY DISPOSITION

Because Systematic failed to obtain leave of the court before bringing suit against Amicus in the 2012 case, and because the circuit court found no evidence of bad faith warranting leave to sue Amicus in the 2009 case, the circuit court properly granted summary disposition in favor of Amicus under MCR 2.116(C)(5). See *Venus Plaza Shopping Ctr*, 228 Mich App at 360-361.

## C. FIFTH THIRD'S MOTION FOR SUMMARY DISPOSITION

Systematic first argues that because Fifth Third sought and obtained the appointment of a receiver, as well as a default judgment without proper notice to Alliance, Alliance's due process rights were violated. But Systematic provides no legal authority to support its assertion that it has standing to challenge a violation of Alliance's due process rights; therefore, this contention is waived. *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007). In any event, we note that Alliance was served with the summons and complaint on April 16, 2009, the motion to appoint the receiver on April 28, 2009, and the amended application for entry of default, default judgment, notice of default, and proof of

service on May 29, 2009. In other words, Alliance received proper notice of the appointment of the receiver and default judgment, and any assertion to the contrary is without merit.

Systematic next claims that it should have received notice of the appointment of the receiver and default judgment proceedings because it was operating its business on the property at the time. Once again, Systematic fails to provide any legal authority to support its position that a tenant must be notified of the appointment of a receiver over the property and a default judgment entered against the owner. This contention is also waived. *Id.* At any rate, although Systematic claims it was a tenant on the property, it was not a party to the mortgage, and the contention that Systematic should have received notice does not appear to be relevant to the instant appeal. Moreover, Systematic was allowed to intervene in the 2009 case and assert its position with respect to whether a valid lease existed between Systematic and Alliance. Consequently, Systematic was provided an adequate opportunity to be heard. We perceive no error with respect to this issue.

Systematic also argues that Fifth Third did not attempt to foreclose on the property, as required by the order appointing the receiver, but instead consented to Amicus's sale of the property, which deprived Alliance and Systematic of the ability to redeem or purchase the property. Systematic does not only fail to rationalize the basis for its claim of error, but it does not provide any legal authority in support of its position. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Notwithstanding the fact that this issue is waived, we note that Fifth Third obtained a court order allowing it to sell the property and subsequently obtained a court order approving the sale of the property. Furthermore, Systematic did not have an ownership interest in the property, and thus would not have been entitled to redeem or purchase the property upon foreclosure. See MCL 600.3240.

Systematic further contends that its expenses in maintaining the property had priority over Fifth Third's mortgage interest. With respect to the priority of construction liens over mortgages, MCL 570.1119 provides in pertinent part:

> (3) A construction lien arising under this act shall take priority over all other interests, liens, or encumbrances which may attach to the building, structure, or improvement, or upon the real property on which the building, structure, or improvement is erected when the other interests, liens, or encumbrances are recorded subsequent to the first actual physical improvement.

> (4) A mortgage, lien, encumbrance, or other interest recorded before the first actual physical improvement to real property shall have priority over a construction lien arising under this act.

Under MCL 570.1119(3) and (4), an individual with a mortgage interest recorded before the first actual physical improvement has priority over an individual with a construction lien arising under the Construction Lien Act. *Jeddo Drywall, Inc v Cambridge Inv Group, Inc*, 293 Mich App 446, 458; 810 NW2d 633 (2011). Even accepting the allegations in Systematic's complaint as true, Fifth Third is entitled to judgment as a matter of law with respect to Count I of Systematic's complaint. Systematic alleged that it first supplied labor and materials in May 2006, and the claim of lien attached thereto provided that Systematic first provided labor or

-10-

materials for an improvement to the property on July 3, 2006. Despite the discrepancy in these dates, it is beyond dispute that Fifth Third recorded its mortgage on January 20, 2006. Hence, Fifth Third's mortgage lien took priority over any construction lien because it was recorded before the first actual improvement.

Systematic also asserts that it stepped into the shoes of Amicus and that its construction lien is entitled to first priority with respect to the proceeds of the sale of the property. In support of its position, Systematic cites *Fisk v Fisk*, 333 Mich 513; 53 NW2d (1952), *Bailey v Bailey*, 262 Mich 215; 247 NW 160 (1933), and *Holmes v Holmes*, 265 Mich 16; 251 NW 360 (1933), none of which supports the assertion that a third party may step into the shoes of a court-appointed receiver and take priority over a mortgagee with first priority. Moreover, Systematic did not present any evidence that Amicus abdicated its receivership responsibilities to Systematic. This argument is without factual or legal support.

We also reject Systematic's assertion that it stated a valid claim for unjust enrichment against Fifth Third because Fifth Third was benefited from its efforts to maintain, repair, preserve, and protect the property. Unjust enrichment is defined as: " '(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.' " *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327; 657 NW2d 759 (2002), quoting *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). When unjust enrichment exists, "the law operates to imply a contract in order to prevent it." *Sweet Air Inv, Inc*, 275 Mich App at 504. However, "a contract will be implied only if there is no express contract covering the same subject matter." *Keywell & Rosenfeld*, 254 Mich at 328. Although Systematic argues that it conferred a benefit on Fifth Third by maintaining, repairing, preserving, and protecting the property, Systematic neglects the fact that it possessed the property without having an enforceable lease and without paying rent for over two years after the receivership was first instituted. Moreover, Systematic benefited from the expenditures by carrying on its operations at the property throughout the receivership, and some of these expenses were incurred before the receivership was initiated. Although Systematic may have conferred a benefit on Fifth Third by paying expenses while occupying the property and making improvements thereon, this certainly did not result in an inequity. *Keywell & Rosenfeld*, 254 Mich App at 327.

Nor did Systematic state a valid claim of account stated. An action for an account stated is based on "an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 554; 837 NW2d 244 (2013). No evidence was presented that an agreement was made between Fifth Third and Systematic to pay a balance, and the assertion that Amicus made a promise to pay Systematic a balance on behalf of Fifth Third is without legal merit. Amicus, as the court-appointed receiver, was not an agent of Fifth Third, but was appointed to protect and benefit both parties and to serve as an officer of the court. *Ypsilanti Fire Marshal*, 273 Mich App at 528. The circuit court properly dismissed the account-stated claim.

Lastly, Systematic asserts that the circuit court erred by applying the doctrine of collateral estoppel given that it had not previously ruled on Systematic's claims for failure to pay the

-11-

construction lien, breach of contract, unjust enrichment, and accounted stated. "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *In re Consumers Energy Application For Rate Increase*, 291 Mich App 106, 122; 804 NW2d 574 (2010). Fifth Third argued below that collateral estoppel applied to Systematic's claims that it was not provided notice and was induced into making expenditures and improvements. While it appears from the record that the circuit court might have incorrectly applied the doctrine of collateral estoppel to certain of Systematic's claims, these claims were legally unenforceable for wholly independent reasons, and were therefore properly dismissed. It is axiomatic that this Court will not reverse when the circuit court has reached the right result, even if it has did so for the wrong reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

Affirmed. Appellees Fifth Third and Amicus, having prevailed on appeal, may tax their costs pursuant to MCR 7.219.

/s/ Kathleen Jansen
/s/ Henry William Saad
/s/ Pat M. Donofrio