*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAURIE DISABATINO, as Next Friend of AD, a Minor,

        Plaintiff-Appellant,

v

GRAND BLANC COMMUNITY SCHOOLS and THEODORE BASING,

        Defendants-Appellees.

UNPUBLISHED
February 11, 2020

No. 346581
Genesee Circuit Court
LC No. 17-109896-CZ

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Plaintiff, as Next Friend of her minor son, AD, appeals by right the trial court's order granting summary disposition in favor of defendants Theodore Basing (Basing) and Grand Blanc Community Schools (GBCS). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2017, AD was a 13-year-old seventh-grade special-education student at Grand Blanc East Middle School. AD had been diagnosed with autism-spectrum disorder and attention-deficit-hyperactivity disorder. Basing was one of his teachers. On June 6, 2017, Basing, while attempting to teach mathematics to AD, pushed a desk in front of the classroom door and sat on the desk. AD was the sole student in the classroom; earlier that day he had chosen to come to a special-education classroom to study math instead of attending a general math class. AD told Basing that he did not know how to complete the math problems.[1] At some point, AD became distraught and aggressive, Basing attempted to restrain him, and Basing was struck in the face. AD was charged with assault as a result.

---

[1] The parties disputed whether the problems were of a type that AD had already learned how to do.

-1-

Plaintiff filed suit, alleging that that Basing's action of blocking the classroom's exit with a desk caused AD great distress, that Basing should have known, because of AD's autism, that distress and aggression would result, and that AD's confinement in the classroom in such a manner violated his rights under the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and constituted false imprisonment, intentional infliction of emotional distress (IIED), and gross negligence.[2] Defendants moved for summary disposition, arguing that plaintiff's PWDCRA claim was preempted by the Michigan Mandatory Special Education Act (MSEA), MCL 380.1701 *et seq.*, and that plaintiff's remaining claims were barred by governmental immunity. After a hearing, the trial court granted summary disposition in favor of defendants. This appeal followed.

## II. PWDCRA CLAIM

Plaintiff argues that Basing and GBCS violated the PWDCRA when Basing blocked the room's exit and prevented AD from leaving the room while knowing that AD suffered from autism, and that the trial court erred by concluding that this claim was not viable because it was preempted by the MSEA.[3] We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendants filed their motion under MCR 2.116(C)(8) and (10). "A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. The purpose of such a motion is to determine whether the plaintiff has stated a claim on which relief can be granted. The motion should be granted if no factual development could possibly justify recovery." *Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001). A

---

[2] Plaintiff additionally alleged that defendants violated the Michigan Department of Education Standards for the Emergency Use of Seclusion and Restraint, and that they violated the Revised School Code, MCL 380.1312, by inflicting corporal punishment on AD. Plaintiff does not appeal the trial court's dismissal of those claims; accordingly, we do not address them.

[3] The MSEA is the statutory vehicle by which Michigan implemented the requirements of the federal Individuals with Disabilities Education Act, 20 USC § 1400 *et seq*. Under the IDEA, states must provide an administrative appeal process for the review of decisions regarding, inter alia, the provision of special education to students. See 20 USC 1415(b)(1)(E). To make a claim under the MSEA, a plaintiff must first exhaust this administrative process, see *Jenkins v Carney-Nadeau Pub Sch*, 201 Mich App 142, 144; 505 NW2d 893 (1993) ("[O]nce the administrative process is exhausted, the school board's decision may be appealed to either state or federal court."); here, although plaintiff asserts that she has exhausted the process, she does not argue that the trial court erred by failing to treat her claim as one arising under MSEA. Rather, plaintiff's position is that the MSEA does not apply to her claim because it is based on Basing's alleged discrimination against AD as a student with autism. Moreover, plaintiff represents that the school board, after an administrative hearing, declined to discipline Basing but granted her request to transfer AD. Plaintiff does not challenge either of those actions, but instead seeks monetary damages under the PWDCRA.

motion under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. A court considers the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

The trial court held that plaintiff's PWDCRA claim was preempted by the MSEA, relying on *Jenkins v Carney-Nadeau Pub Sch*, 201 Mich App 142; 505 NW2d 893 (1993), and *Woolcott v State Bd of Ed*, 134 Mich App 555; 351 NW2d 601 (1984). The plaintiff in *Jenkins*, who had spina bifida, brought an action under the PWDCRA,[4] alleging that "attention is drawn to her handicap because an aide has been assigned to accompany her at school even though she does not need such assistance" and that the school was improperly preventing her from using her motorized wheelchair. *Jenkins*, 201 Mich App at 143. This Court found that her claim was preempted by the MSEA, stating that "[s]pecific statutes prevail over general statutes covering the same subject matter" and that "the MSEA is unquestionably more specific" than the PWDCRA. *Id*. The Court noted that while the PWDCRA prohibits discrimination on the basis of a disability, the MSEA affirmatively requires the provision of special-education programs to maximize the potential of every disabled person. *Id*.; see also MCL 380.1701 and MCL 380.1711. The Court stated, "The MSEA therefore more specifically addresses the education of disabled children than does the" PWDCRA. *Id*.

In reaching its conclusion, the *Jenkins* Court cited favorably to *Woolcott*. *Jenkins*, 201 Mich App at 146, citing *Woolcott*, 134 Mich App at 557-558, 560. In *Wolcott*, the plaintiff alleged a violation of the PWDCRA because of a school district's refusal to use a cued speech interpreter. The Court concluded that this claim was not viable because the MSEA, with its "specific rules for education of" disabled persons, "limited[ed] the scope of the general statute[]." *Id*. at 563.

This Court has consistently applied the reasoning of *Jenkins* and *Wolcott* in analyzing claims under the PWDCRA that are more appropriately brought under the MSEA. See, e.g., *Miller ex rel Miller v Lord*, 262 Mich App 640, 642; 686 NW2d 800 (2004). Moreover, in *Fry v Napoleon Community Schs*, ___US___, ___; 137 S Ct 743, 752; 197 L Ed 2d 46 (2017), in discussing analogous federal laws, the United States Supreme Court affirmed that exhaustion of administrative remedies is necessary when a plaintiff's claim involves the denial of free appropriate public education (FAPE). The Court also stated, "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id*. The Court further elaborated:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could

---

[4] At the time of *Jenkins*, this law was known as the Handicappers' Civil Rights Act. 1998 PA 20 changed the title of the act. See MCL 37.1101.

an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim. [*Id*. at ___; 137 S Ct at 756.]

In her complaint under the PWDCRA, plaintiff cited MCL 37.1402(a), which states that an educational institution shall not

> [d]iscriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

She also cited MCL 37.1102(2), which states that, except in certain circumstances, a person "shall accommodate a person with a disability for purposes of . . . education[.]" In addition, citing the PWDCRA in general, she stated that the act provides that the full use of educational facilities without discrimination is a civil right.

It is clear, in light of the specific cited provisions of the PWDCRA in Count I of the complaint and under *Fry*, that the gravamen of plaintiff's claim was indeed the denial of a FAPE, despite her argument that the claim has its basis in Basing's alleged discriminatory treatment of AD rather than in the violation of an individual education plan. Therefore, the MSEA controls. See *Jenkins*, 201 Mich App at 146; *Woolcott*, 134 Mich App at 557-558, 560; *Fry*, ___ US at ___. This conclusion is not altered by the fact that plaintiff sought money damages rather than solely equitable relief; the plaintiffs in *Woolcott* and *Miller* also sought money damages. See *Wolcott*, 134 Mich App at 563 (stating that the "[p]laintiffs are limited to those remedies provided" in the MSEA), *Miller*, 262 Mich App at 648 (concluding that the plaintiffs' PWDCRA claim was precluded by the MSEA "even though plaintiffs seek monetary damages unavailable under the MSEA").

We conclude that the trial court did not err by finding that plaintiff's PWDCRA claim was preempted by the MSEA.

III. REMAINING CLAIMS

Plaintiff also argues that the trial court erred by dismissing her claims for gross negligence, false imprisonment, and IIED on the basis of governmental immunity. We disagree.

MCR 2.116(C)(7) provides that summary disposition is appropriately granted if a party is entitled to governmental immunity.[5] "To survive a motion raised under MCR 2.116(C)(7), the plaintiff must allege specific facts warranting the application of an exception to governmental immunity." *Id.* at 597. The contents of the complaint are accepted as truthful unless the movant submits contradictory documentation. *Id.* The trial court may consider admissions, depositions, and other documentary evidence submitted by the parties. *Id.* "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010) (citation omitted).

Because Basing's liability for gross negligence requires a different analysis than intentional torts, and because GBCS's liability, if any, would arise vicariously from its status as Basing's employer, we analyze these claims and defendants separately.

## A. LIABILITY OF BASING—GROSS NEGLIGENCE

MCL 691.1407 states, in part:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

---

[5] As noted, defendants filed their motion for summary disposition under MCR 2.116(C)(8) and (10). However, defendants argued that summary disposition of these claims was appropriate because of governmental immunity, which implicates MCL 2.116(C)(7). Plaintiff concedes, however, that "this Court can review the matter under the correct court rule."

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

\* \* \*

(8) As used in this section:

(a) "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407.]

Plaintiff does not dispute that, during the June 6, 2017 incident, Basing was an employee of a governmental agency, was acting within the scope of his authority or reasonably believed he was doing so, and was engaged in the discharge of a governmental function. Rather, she focuses on whether Basing committed gross negligence that was the proximate cause of AD's emotional trauma, arguing that reasonable jurors could find that he did and that the trial court therefore erred by granting summary disposition in his favor. We disagree.

"The determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). "Rather, there must be evidence that the employee's conduct was reckless." *Id*. "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden*, 461 Mich at 122. Gross negligence "suggests . . . almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).

Plaintiff did not present adequate evidence to create a genuine issue of material fact regarding whether Basing was grossly negligent. Plaintiff argues that Basing disregarded a substantial risk and did not care about AD's safety because he should have known that blocking access to the door would cause an altercation resulting in emotional trauma to AD. However, as noted by the trial court, all evidence indicates that Basing was simply attempting to get AD to learn some math. Plaintiff admitted that "[w]ork avoidance was always a problem of [AD's]. He would shut down." She further admitted that on one prior occasion, AD had ripped up his paper and broken his pencil when presented by Basing with a very basic math problem, because he wanted to go to the bathroom. AD admitted that he had thrown tantrums in the past about doing work and had attempted to run out of rooms in the past to get out of doing work. AD also acknowledged that Basing wanted him to complete the math problems before letting him out of the room, and plaintiff admitted that Basing had even reduced the number of problems for AD to complete, in an attempt to "negotiate" with AD. Basing let AD choose which room to use, and he allowed AD to have a doughnut before beginning the math lesson. All of these actions support the conclusion that Basing's actions did not indicate a lack of care for the welfare and safety of AD, but simply

reflected his attempt to teach AD math in light of his specific challenges. See *Tarlea*, 263 Mich App at 90.

Plaintiff argues that her expert witness, Dr. Richard Solomon, referred during his deposition to Basing's actions as "egregious." However, Dr. Solomon specifically said that "the episode with . . . Basing was one example of a *particularly egregious problem* triggered by the school setting." (Emphasis added.) Dr. Solomon's mere use of the word "egregious" is not sufficient to bring plaintiff's claim into the realm of gross negligence. On the whole, Solomon's testimony, and the remaining evidence presented by plaintiff, might arguably raise a question of material fact regarding ordinary negligence, but it does not raise a genuine issue of fact regarding gross negligence. *Chelsea Investment Group LLC*, 288 Mich App at 265. There was insufficient evidence that Basing acted recklessly and with a substantial lack of concern for whether an injury would occur, see MCL 691.1407(8)(a), and the trial court correctly granted summary disposition in favor of Basing on this claim.

## B. LIABILITY OF BASING—FALSE IMPRISONMENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

While plaintiff's gross negligence claim is governed by MCL 691.1407(2), IIED is an intentional tort, *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999), as is false imprisonment, *Odom v Wayne Co*, 482 Mich 459, 464-465; 760 NW2d 217 (2008). MCL 691.1407(3) states that "[s]ubsection (2) does not alter the law of intentional torts as it existed before July 7, 1986." In *Odom*, 482 Mich at 470, 479-480, the Michigan Supreme Court explained that because of this language, the application of governmental immunity with regard to intentional torts differs from its application with regard to negligent torts. A governmental employee may assert the defense of governmental immunity to intentional tort claims if

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial. [*Id*. at 480.]

Plaintiff does not contest that elements (a) and (c) were satisfied, but argues that Basing's actions were not in good faith or were malicious. We disagree. "The good-faith [and lack of malice] element . . . is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Odom*, 482 Mich at 482.

We find that there is no genuine issue of material fact regarding whether Basing acted maliciously or in bad faith. *Dextrom*, 287 Mich App at 429 (citation omitted). The evidence, as discussed in connection with the gross-negligence claim, arguably showed negligence when viewed in the light most favorable to plaintiff, but it also showed that Basing was simply trying to get AD to learn some math. There is no evidence that he was indifferent to whether harm would

result from his actions. See *Odom*, 482 Mich at 475. Reasonable minds could not differ regarding the legal effect of the pertinent facts, *Dextrom*, 287 Mich App at 429, and Basing was entitled to governmental immunity. The trial court did not err by granting summary disposition in favor of Basing on these claims.

## C. LIABILITY OF GBCS

Because the alleged liability of GBCS was predicated on the alleged liability of Basing, and summary disposition was appropriately granted in favor of Basing, summary disposition was necessarily also appropriately granted in favor of GBCS. In addition, plaintiff alleged gross negligence as the applicable exception to governmental immunity, but this exception applies only to individuals, not agencies. *Yoches v Dearborn*, 320 Mich App 461, 476; 904 NW2d 887 (2017); see also *Fairley v Dep't of Corrections*, 497 Mich 290, 298; 871 NW2d 129 (2015). In addition, "[G]overnmental employers may not be held liable for the intentional tortious acts of their employees[.]" *Mays*, 323 Mich App at 68. Plaintiff has not demonstrated how GBCS is excepted from governmental immunity with regard to her claims of gross negligence, false imprisonment, and intentional infliction of emotional distress, and the trial court appropriately granted summary disposition in favor of GBCS on those claims.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra