SMITH v KOWALSKI

Docket No. 194354. Submitted April 2, 1997, at Grand Rapids. Decided May 23, 1997, at 9:10 A.M. Leave to appeal sought.

Michael C. Smith brought an action in the Branch Circuit Court against Mark Kowalski and other officials or guards at the Lakeland Correctional Facility, alleging and seeking damages for gross negligence after he sustained a closed head injury and quadriplegia while at the facility as an inmate. The plaintiff had hit a building near a hard-surface courtyard and grass field while playing football when he ran from the field and onto the courtyard in an attempt to catch a pass. The plaintiff alleged that the defendants should have promulgated and enforced safety rules against the playing of football in the courtyard and that the defendants failed to properly supervise and monitor the inmates' playing of football and to provide protective equipment. The court, Michael H. Cherry, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. Liability on the part of the defendants is precluded by the public-duty doctrine, pursuant to which a governmental employee does not incur tort liability to an individual for the breach of a duty owed to the public. The defendants owed a duty to the prison population in general (the public for purposes of this case) and did not have a special relationship with the plaintiff that was different from that which the defendants had with the rest of the inmates. The special-relationship exception to the public-duty doctrine does not apply to allow for liability on the part of the defendants.

2. Even if the public-duty doctrine did not apply to this case, evidence of gross negligence sufficient to overcome governmental immunity is lacking. The record indicates that there were rules prohibiting the playing of football in the courtyard and that the defendants actively enforced those rules. The record does not support the plaintiff's claim that the defendants' supervision of football playing by the inmates was inadequate. The record indicates that the inmates were allowed to play flag football, and the plaintiff did not offer evidence showing that protective equipment was neces-

sary for this permitted form of football such that the defendants can be held liable for failing to provide protective equipment.

Affirmed.

*Law Offices of Jeffrey H. Feldman, P.C.* (by *Paul L. Kaliszewski*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Thomas A. Kulick*, Assistant Attorney General, for the defendants.

Before: TAYLOR, P.J., and HOOD and GRIBBS, JJ.

PER CURIAM. The trial court granted summary disposition for defendants,[1] finding that no special relationship existed between plaintiff and any of the defendants to obviate the "public-duty" doctrine. The trial court further found that none of defendants' actions or omissions, if proved, constituted gross negligence so as to overcome governmental immunity. The trial court also concluded that plaintiff's accident was not foreseeable.

Plaintiff appeals as of right from the order granting defendants summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff, an inmate at Lakeland Correctional Facility (LCF), was playing football on the prison grounds. Plaintiff went out for a pass that took him from the grassy football field onto the courtyard, a hard-surface area. There, moving rapidly, he collided with the metal frame of a window of Building 47. Building 47 is located at the back of a courtyard that has brick

[1] The docket sheet indicates that the Department of Corrections is the appellee in this case; however, it was never a party to this suit. Rather, the individuals listed were sued individually in their capacities as employees of the Department of Corrections.

walls on three sides. The collision resulted in serious injury to plaintiff, including a closed head injury and quadriplegia.

Plaintiff subsequently filed an action against defendants, who are eight individuals employed at LCF, alleging that their gross negligence caused his injuries. Plaintiff alleged that defendants failed to promulgate and enforce safety rules to prevent the playing of football in a courtyard, on a hard surface, and without proper personal protective equipment, including, but not limited to, helmets. Plaintiff further alleged that defendants did not properly and adequately supervise, monitor, and protect him and others who were playing football in proximity to buildings, walls, structures, and on a hard and dangerous surface, without personal protective equipment, including, but not limited to, helmets.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10).[2] A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Eason v Coggins Memorial Christian Methodist Episcopal Church*, 210 Mich App 261, 263; 532 NW2d 882 (1995). This Court reviews the trial court's decision on a motion brought under this rule de novo to determine if the claim is so clearly unenforceable

---

[2] The trial court granted defendants' motion under MCR 2.116(C)(10). Although summary disposition was properly granted, we conclude that it would have been more appropriately granted under MCR 2.116(C)(7), because plaintiff's claims were barred by governmental immunity, and MCR 2.116(C)(8), because plaintiff failed to state a claim upon which relief can be granted. We therefore review the issues presented under MCR 2.116(C)(7) and (8). An order granting summary disposition under the wrong subrule may be reviewed under the correct subrule. *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App 210, 216; 561 NW2d 854 (1997).

as a matter of law that no factual development could establish the claim and justify recovery. *Id.* Summary disposition under this rule is appropriate in a negligence action if it is determined that, as a matter of law, the defendant did not owe a duty to the plaintiff according to the alleged facts. *Id.*

Plaintiff argues that the trial court erred in finding that defendants owed no duty to him under the public-duty doctrine. We disagree.

An essential element of a negligence claim is the existence of a duty owed by the defendant to the plaintiff. *Koenig v South Haven*, 221 Mich App 711; 562 NW2d 509 (1997); *Chivas v Koehler*, 182 Mich App 467, 475; 453 NW2d 264 (1990). Whether a duty exists is a question of law for the court. *Koenig, supra.* The Michigan Supreme Court recently affirmed the validity of the public-duty doctrine in *White v Beasley*, 453 Mich 308, 313; 552 NW2d 1 (1996). The public-duty doctrine provides

> "[t]hat if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages." [*Id.* at 316, quoting 2 Cooley, Torts (4th ed), § 300, pp 385-386.]

This Court has held that the public-duty doctrine applies to prison guards and prison officials. *Harrison v Director of Dep't of Corrections*, 194 Mich App 446, 456-460; 487 NW2d 799 (1992); *Chivas, supra* at 476.

The special-relationship exception to the public-duty doctrine exposes a government employee to liability for the employee's actions whenever a court finds that the government employee has a "special-relationship" with the plaintiff. *White, supra* at 319. In *White*, the Supreme Court adopted a test for determining whether a special relationship had been created between a police officer and a private individual. *Id.* at 320. The elements of the test are:

> "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;
>
> (2) knowledge on the part of the municipality's agent that inaction could lead to harm;
>
> (3) some form of direct contact between the municipality's agents and the injured party; and
>
> (4) that party's justifiable reliance on the municipality's affirmative undertaking . . . ." [*Id.* at 320-321, quoting *Cuffy v City of New York*, 69 NY2d 255, 260; 513 NYS2d 372; 505 NE2d 937 (1987).]

The Supreme Court, however, declined to decide whether this test should be applied to other government employees. *White, supra* at 315, n 3.

This Court has addressed the "special-relationship" exception to the public-duty doctrine with respect to prison officials and inmates where the prisoners injured third parties after being released, or escaping, from prison. For example, in *Chivas, supra* at 469-470, the estate of Chivas brought suit against prison administrators and guards after Chivas was murdered by two prison escapees. The plaintiff alleged that the defendants owed a duty to Chivas because a special relationship existed between the guards and the escapees. *Id.* at 475. This Court ruled that no special

relationship existed because the defendant guards owed a duty to the general prison population, and no particular special relationship was alleged between the defendant guards and the escaped inmates that was different from the relationship between the guards and the inmate population. *Id.* at 476.

In *Harrison, supra,* a convict who was paroled earlier than he should have been under the statutes governing good-time credits murdered two boys and attempted to murder a third. The plaintiff brought suit against various state agencies, officials from the Department of Corrections, and members of the Parole Board. *Id.* at 448. This Court again held that no special relationship existed between the defendants and the parolee because no special relationship was alleged between the defendants and the parolee that was different from the relationship between the general population of parolees and the warden of a prison or members of a parole board. *Id.* at 460.

Following the rationale of *Chivas, supra,* and *Harrison, supra,* we conclude that no special relationship existed between defendants and plaintiff. Defendants are prison guards or prison officials. Defendants were responsible for the prison population generally, and no particular special relationship was demonstrated between defendants and plaintiff that was different from the relationship between defendants and the general inmate population. Thus, we decline to find that a special relationship existed between defendants and plaintiff. The trial court properly granted defendants summary disposition. Even if we found a special relationship, we still would rule against plaintiff because gross negligence did not exist.

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition because a question of fact exists regarding whether defendants' actions or omissions constituted gross negligence under MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). Again, we disagree.

Summary disposition is proper under MCR 2.116(C)(7) for a claim that is barred because of immunity granted by law. When reviewing a grant of summary disposition on the ground that the claim is barred by governmental immunity, this Court considers all documentary evidence submitted by the parties. *Codd v Wayne Co*, 210 Mich App 133, 134; 537 NW2d 453 (1995). All well-pleaded allegations are accepted as true and construed in favor of the nonmoving party. *Id.* To survive a motion for summary disposition, brought under MCR 2.116(C)(7), the plaintiff must allege facts warranting the application of an exception to governmental immunity. *Codd, supra* at 134-135.

MCL 691.1407(2); MSA 3.996(107)(2) provides:

> *Except as otherwise provided in this section,* and without regard to the discretionary or ministerial nature of the conduct in question, *each officer and employee of a governmental agency,* each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency *shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:*

> \*    \*    \*

(c) *The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.* [Emphasis added.]

Plaintiff claims that defendants' failure to promulgate and enforce safety rules to prevent the playing of football on a hard-surface courtyard constituted gross negligence. This claim is without merit. It is undisputed that there was a rule against playing football in the courtyard, both to protect the inmates and to prevent damage to the buildings surrounding the courtyard. The evidence showed that defendants actively sought to enforce that rule. Several defendants testified that inmates found playing football in the courtyard were instructed to stop and move onto the football field, the grassy portion of the prison yard away from the buildings. In some cases, the football was taken from the inmates. In addition, if there were subsequent violations, the offending inmate was issued a ticket.

With respect to this claim, the only potentially conflicting evidence offered by plaintiff was plaintiff's and another inmate's testimony that they were unaware of the rule prohibiting playing football in the courtyard. The other inmate, however, stated that he had never played football in the courtyard before the day of the incident and that he did not see any corrections officers around while they were playing. Plaintiff does not claim that defendants saw the inmates playing football in the courtyard, or sat idly by while they were doing so. This does not present any dispute with respect to material facts.

We also are not persuaded by plaintiff's argument that defendants were grossly negligent because they failed to perform their duties to monitor and control the yard area to ensure that the inmates were abiding by the rules. There is no evidence that defendants failed to adequately perform those duties. At the time of plaintiff's injury, plaintiff was engaged in football practice with other inmates during his leisure time. There were yard officers on duty at the time of the accident, who made random patrols. Plaintiff does not challenge the number of yard officers on duty, or their method of patrol. Also, one of the resident unit officers[3] for Building 47 testified that, shortly before plaintiff's accident, he told plaintiff to stop playing football in the courtyard. Plaintiff and another inmate denied that they were told to stop playing in the courtyard. Under no circumstances could defendants' failure to discover plaintiff playing football, in an unauthorized area for ten or fifteen minutes, constitute conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results."

Plaintiff's claim that defendants were grossly negligent for failing to provide him with adequate protective equipment is also meritless. Contact sports were prohibited at LCF. The inmates were permitted to play only "flag" football. Plaintiff fails to offer any evidence that safety equipment, such as helmets, was standard or necessary for playing flag football in the designated grassy field. Moreover, plaintiff chose to pursue a pass that took him onto the courtyard, which was not only an unauthorized playing area, but

---

[3] One of the responsibilities of the resident unit officer is to monitor the courtyard periodically to ensure that no improper activities are taking place.

obviously a hard-surface area surrounded by buildings. In the absence of gross negligence, defendants were properly granted summary disposition.

Plaintiff finally argues that the trial court erred in finding that his injuries were not foreseeable even though defendants admitted that inmates are prohibited from playing football in the courtyard to prevent injury. We need not address this issue because our disposition of the preceding issues renders this issue moot. *McCready v Hoffius*, 222 Mich App 210, 219; 564 NW2d 493 (1997).

Affirmed.