# STATE OF MICHIGAN

# COURT OF APPEALS

LEONARD GUST and SHARON GUST,

        Plaintiffs-Appellants,

v

LENAWEE COUNTY ROAD COMMISSION,

        Defendant-Appellee.

UNPUBLISHED
February 21, 2017

No. 329062
Lenawee Circuit Court
LC No. 10-003769-CZ

Before: GLEICHER, P.J., and MURRAY and HOOD, JJ.

PER CURIAM.

Plaintiffs Sharon and Leonard Gust appeal as of right an order entering a judgment of no cause of action in favor of defendant the Lenawee County Road Commission. For the reasons stated herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This lawsuit was before two prior panels of this Court. *Gust v Lenawee Cty Rd Comm'n*, unpublished opinion per curiam of the Court of Appeals, issued November 8, 2011 (Docket No. 304142); *Gust v Lenawee Cty Rd Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued August 26, 2014 (Docket No. 311844). The prior panels' opinions set forth the following facts, which are also relevant to the present appeal:

> The Gusts are husband and wife and the owners of real property consisting of acreage on both the north and south sides of Sandy Beach Road in Lenawee County. The property has been owned by Gust family members in excess of 100 years. Sandy Beach Road runs in an east-west direction and bisects the Gusts' property. The Gusts maintain a residence and other buildings on the northern section of the property and allege the natural flow of water on the property runs from north to south. The Gusts sued the Commission for inverse condemnation, trespass and negligence. The Gusts set forth that the portion of Sandy Beach Road that bisects their property 'incorporates a drain,' which 'was constructed and maintained at said location several feet higher than the adjacent lands on each side' of the roadway. The roadway 'now acts as a dam preventing water . . . from naturally flowing to the lands on the south side of Sandy Beach Road' and further on 'to adjoining lands.' Since the construction of the roadway a drain has existed beneath the roadbed that permitted surface water to flow to the south and prevent

-1-

flooding. Within the last six years the drain has purportedly 'ceased to function' and has resulted in turning the roadway into a dam that creates 'ponding' on the northern portion of the Gusts' property. The ponding has allegedly resulted in water accumulation at a depth of several feet over 8 to 10 acres of their property. The Gusts claimed that 'the construction of said roadway and drain, coupled with said failure to maintain and/or repair said drain, was the sole course [sic] of the resultant flooding.' The Gusts contended that the flooding rendered their property inhabitable [sic] as the flooding has destroyed the septic systems for the residence and seriously damaged other buildings. [*Gust*, unpub op at 1-2; *Gust*, unpub op at 1.]

Following the filing of plaintiffs' complaint, the Road Commission sought summary disposition on plaintiffs' inverse condemnation claim. The trial court denied the Road Commission's motion for summary disposition, finding a factual question existed regarding whether the Road Commission took an affirmative act directed at plaintiffs' property. The 2011 panel of this Court affirmed the trial court's denial of the Road Commission's motion for summary disposition as to plaintiffs' inverse condemnation claim, concluding that while a "negligent failure" to maintain the drainage pipe would be "insufficient to establish an affirmative governmental action directed at a plaintiff's property," if the Road Commission "constructed and maintained" Sandy Beach Road, that would imply "the modification of the road elevation," which in combination could denote an affirmative act. *Gust v Lenawee Cty Rd Comm'n*, unpublished opinion per curiam of the Court of Appeals, issued November 8, 2011 (Docket No. 304142); slip op at 3.

On remand, plaintiffs filed an amended complaint adding claims of inverse condemnation and gross negligence against several members of the Board of Road Commission and Orrin Gregg, the former managing director of the Road Commission. In response, the members of the Board of Road Commission and Gregg filed motions for summary disposition pursuant to MCR 2.116(C)(8), arguing they were entitled to governmental immunity. Plaintiffs filed a motion for partial summary disposition on their inverse condemnation claim against the Road Commission, arguing the Road Commission's failure to repair or maintain the drainage pipe, coupled with its actions in filling the hole plaintiffs' dug with gravel, constituted a taking of their property without just compensation leaving no genuine issue as to any material fact aside from the amount of damages.

The trial court granted the motions for summary disposition filed by the board members and Gregg, finding they were all entitled to governmental immunity. The trial court also granted plaintiffs' motion for partial summary disposition on their inverse condemnation claim against the Road Commission and directed a hearing be set to determine damages. The Road Commission filed an application for leave to appeal, which this Court denied.[1] The Road

---

[1] *Gust v Lenawee Cty Rd Comm'n*, unpublished order of the Court of Appeals, issued April 9, 2013 (Docket No. 311844).

Commission appealed to the Supreme Court, which remanded as on leave granted.[2]  On remand, this Court concluded that plaintiffs had not established an inverse condemnation as a matter of law and questions of fact remained regarding whether the Road Commission took an affirmative action directly aimed at plaintiffs' property and in regards to causation. *Gust v Lenawee Cty Rd Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued August 26, 2014 (Docket No. 311844); slip op at 4.

On remand, a seven day trial on plaintiffs' inverse condemnation claim was held.  The trial court instructed the jurors that a claim for inverse condemnation "is not a claim for negligently failing to maintain a roadway," and stated that "[i]n order to recover for inverse condemnation, the plaintiffs must prove the road commission abused its powers by affirmative acts directly aimed at the plaintiffs' property."  Plaintiffs argued that the Road Commission took affirmative action directly aimed at their property when it: (1) constructed Sandy Beach Road without adequate planning for water management, (2) improved and elevated Sandy Beach Road without addressing the drainage issues, and (3) installed an under road drainage pipe, but failed to maintain it.  Plaintiffs asserted that these actions resulted in the flooding of their property, which caused significant damage and resulted in a taking without just compensation.  The Road Commission argued it never engaged in affirmative action directly aimed at plaintiffs' property as: (1) the Road Commission did not construct, improve, or elevate Sandy Beach Road, and (2) did not install the drainage pipe beneath Sandy Beach Road that plaintiffs assert was the cause of the flooding.  Further, the Road Commission argued that its alleged failure to maintain the drainage pipe under Sandy Beach Road did not cause the flooding on plaintiffs' property, but rather, the flooding was the result of plaintiffs' failure to maintain the private tile drainage system that ran under the road.

Plaintiffs offered only minimal testimony to support their contention that the Road Commission built or constructed Sandy Beach Road.  However, several of the Road Commission's witnesses offered testimony indicating Sandy Beach Road predated the existence of the Road Commission, demonstrating that the Road Commission did not build or construct Sandy Beach Road.  Several witnesses testified regarding road construction that altered, improved, or elevated Sandy Beach Road in some significant manner.  However, other witnesses testified that roadwork completed on Sandy Beach Road only amounted to general maintenance and did not improve or elevate the road.

There was also extensive testimony regarding whether the Road Commission or some private party installed the old drainage pipe plaintiffs found buried 13 feet beneath Sandy Beach Road.  Several witnesses testified that there was no evidence that a private party installed the clay tile system or drainage pipe, and implied the Road Commission must have installed the pipe.  However, several other witnesses testified that there is no record of the Road Commission installing the drainage pipe on plaintiffs' property, and that the system's placement and materials indicate that it was a private drainage system.

---

[2] *Gust v Lenawee Cty Rd Comm'n*, 495 Mich 879; 838 NW2d 558 (2013).

Further, several witnesses testified that a clog in the drainage pipe plaintiffs discovered buried beneath Sandy Beach Road was the cause of the flooding on plaintiffs' property. Both Scott A. Merillat, the managing director of the Road Commission, and Robert Lewis, a retired Road Commission operations manager, conceded that Sandy Beach Road acted as a dam by stopping water from flowing from the north side to the south side of the road and that the height of the standing water was directly correlated to the road's height. However, Merillat never testified that the road was the cause of the flooding. Instead, he stated that the low land topography of plaintiffs' property, coupled with a failure in the private tile drainage system, was the actual cause of the flooding. Similarly, Lewis and Steven Puuri, the Road Commission's civil engineering expert, also concluded that a failure in the private drainage tile system caused the flooding.

Following this testimony, plaintiffs reiterated their argument that the Road Commission took affirmative action directly aimed at their property when it: (1) constructed Sandy Beach Road without adequate planning for water management, (2) improved and elevated Sandy Beach Road without addressing the drainage issues, and (3) installed an under road drainage pipe, but failed to maintain it, and that those actions caused the flooding and resulting damage to their property. The Road Commission argued that plaintiffs failed to establish it took affirmative action directly aimed at plaintiffs' property as: (1) the Road Commission did not construct, improve, or elevate Sandy Beach Road, and (2) did not install the drainage pipe beneath Sandy Beach Road that plaintiffs assert was the cause of the flooding. Further, the Road Commission argued that even if it had committed these acts, they were not directed at plaintiffs' property and did not cause the flooding. The jury was given a special verdict form and answered "No" to the first question that asked, "Did the Lenawee County Road Commission engage in affirmative acts specifically directed at plaintiff's [sic] property such that there was a taking of plaintiffs' property?"[3] Accordingly, the trial court issued a judgment of no cause of action in favor of the Road Commission.

Several weeks later, plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV) and a motion for new trial on damages. Plaintiffs argued that: (1) they established a taking as a matter of law during trial, and (2) they are entitled to relief from the order dismissing their claims against Gregg, as he was not entitled to governmental immunity. After a hearing, the trial court denied plaintiffs' motion. This appeal then resulted.

## II. ANALYSIS

Plaintiffs argue they established at trial an inverse condemnation as a matter of law, as they either: (1) were not required to prove an affirmative act committed by the Road Commission directed at their property, or (2) they established the Road Commission committed such an act.

---

[3] Because the jury reached this conclusion, it did not decide if plaintiffs sustained damages or if the Road Commission's actions were a substantial cause of those damages.

This Court reviews de novo a trial court's ruling on a JNOV motion. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). "In reviewing a decision regarding a motion for JNOV, this Court must view the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party." *Morinelli v Provident Life & Acc Ins Co*, 242 Mich App 255, 260-261; 617 NW2d 777 (2000), citing *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998). "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id.*, citing *Severn v Sperry Corp*, 212 Mich App 406, 412; 538 NW2d 50 (1995). A motion for JNOV may only be granted when the moving party is entitled to judgment as a matter of law. *Sniecinski*, 469 Mich at 131.

First, plaintiffs argue that proof of an affirmative act by the Road Commission directly aimed at their property was unnecessary because they suffered a physical invasion of their property and the Road Commission conceded the issue of causation demonstrating an inverse condemnation as a matter of law. However, at trial, plaintiffs never objected to the jury instructions requiring them to prove an affirmative act, nor did they present to the jury the argument that the flooding itself constituted a taking. Instead, plaintiffs now argue this new legal theory regarding why they should have prevailed at trial. "[G]enerally a 'failure to timely raise an issue waives review of that issue on appeal.' " *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008), quoting *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987). "This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful." *Id.* at 388. Accordingly, the trial court properly denied plaintiffs' motion for JNOV due to plaintiffs' failure to assert this argument at trial.

In the alternative, plaintiffs argue that even if they were required to prove that the Road Commission committed an affirmative act directed at their property to establish an inverse condemnation, they did so by showing that the Road Commission engaged in such affirmative action by operating and maintaining Sandy Beach Road such that it interfered with the natural flow of ground water, and by failing to adequately maintain the drainage pipe under Sandy Beach Road in spite of its statutory duty to do so.

"[A] governmental actor may cause a taking of private property by flooding the property or diverting excess surface water onto the property." *Wiggins v City of Burton*, 291 Mich App 532, 572; 805 NW2d 517 (2011). Further, "[w]hat governmental action constitutes a 'taking' is not narrowly construed." *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 549; 688 NW2d 550 (2004), citing *Detroit Bd of Ed v Clarke*, 89 Mich App 504, 508; 280 NW2d 574 (1979). However, a plaintiff cannot establish that the government engaged in an affirmative action directed at a plaintiff's property merely by alleging the government negligently failed to abate a nuisance. *Hinojosa*, 263 Mich App at 548; see also *Attorney Gen v Ankersen*, 148 Mich App 524, 562; 385 NW2d 658 (1986) ("inaction and omissions by the state cannot be found to constitute a 'taking' "). Similarly, the government's express refusal to act also does not amount to an affirmative action directed at a plaintiff's property. See *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009) (finding the plaintiff failed to allege any direct action that the city took against the plaintiff's property where the plaintiff only asserted that the city refused to construct a drainage system to address the flooding of the plaintiff's property). Instead, a deliberate or "overt" action or activity by the

government is necessary to establish an affirmative act. See *Hinojosa*, 263 Mich App at 540; 688 NW2d 550, 552 (2004); see e.g., *Peterman v Dep't of Natural Resources*, 446 Mich 177, 197-202; 521 NW2d 499 (1994) (finding that the government's construction of jetties, which resulted in the washing away of plaintiff's property, constituted a taking).

In pretrial pleadings, plaintiffs argued "[t]hat Sandy Beach Road, which incorporates a drain, was constructed and maintained at said location several feet higher than the adjacent lands on each side of Sandy Beach Road." Previously, this Court acknowledged that, "[t]he phrase 'constructed and maintained' denotes an affirmative act, implying the modification of the road elevation" and determined that "[i]n combination, the language of this averment is sufficient to meet the" affirmative act requirement. *Gust v Lenawee Cty Rd Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued November 8, 2011 (Docket No. 304142), slip op at 3. At trial, while the Road Commission repeatedly denied constructing or improving the road, Merillat testified that the Road Commission maintained Sandy Beach Road by filling pot holes and removing snow. However, at trial, plaintiffs did not argue that the mere maintenance of the road constituted an affirmative act. Even assuming the jury was presented with this argument, plaintiffs did not establish an inverse condemnation as a matter of law, as this Court stated that the combination of improving and maintaining the road could constitute an affirmative act, and the Road Commission presented ample testimony indicating it did not construct, improve, or elevate the road. Further, the Road Commission offered testimony and documentary evidence indicating that it did not own or install the under road drainage pipe, and was therefore, not required to maintain it. Accordingly, the evidence presented at trial, viewed in a light most favorable to defendant, indicated that the Road Commission did not engage in affirmative acts directed at plaintiffs' property, and therefore, plaintiffs did not establish an inverse condemnation as a matter of law and the trial court did not err in denying plaintiffs' motion for JNOV.

Next, plaintiffs argue that the trial court erred in dismissing their claims against Gregg,[4] as he was not entitled to governmental immunity because MCL 691.1407(5) provides absolute governmental immunity to the highest elective *or* highest appointive executive official and the members of the Road Commission were already granted governmental immunity.

Gregg moved for summary disposition pursuant to MCR 2.116(C)(8) and the trial court granted the motion under that subrule. Although summary disposition was properly granted, "it would have been more appropriately granted under MCR 2.116(C)(7), because plaintiff[s'] claims were barred by governmental immunity." *Smith v Kowalski*, 223 Mich App 610, 613, n 2; 567 NW2d 463 (1997). "An order granting summary disposition under the wrong subrule may be reviewed under the correct subrule." *Id.*, citing *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App. 210, 216; 561 NW2d 854 (1997). Accordingly, this issue should be reviewed under MCR 2.116(C)(7).

_____

[4] While the trial court dismissed plaintiffs' claims against Gregg before the trial, a party aggrieved by a trial court's decision on a motion for summary disposition may proceed to final judgment and raise the trial court's errors in deciding the motion in an appeal taken from final judgment. MCR 2.116(J)(2)(c).

"MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law." *Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010). "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Id*. "To survive a motion for summary disposition, brought under MCR 2.116(C)(7), the plaintiff must allege facts warranting the application of an exception to governmental immunity." *Smith*, 223 Mich App at 616.

"Governmental immunity is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a governmental agency." *Nawrocki v Macomb Co Rd Comm'n*, 463 Mich 143, 155-156; 615 NW2d 702 (2000). Pursuant to the governmental tort liability act, MCL 691.1401 et seq., governmental agencies are immune from tort liability when engaged in a governmental function, and that immunity from tort liability is "expressed in the broadest possible language." *Id*. at 156.

MCL 691.1407(5), provides certain high-ranking officials with absolute immunity from tort liability and provides:

> A judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Pursuant to MCL 691.1407(5), in order

> [t]o qualify for absolute immunity from tort liability an individual governmental employee must prove his or her entitlement to immunity by establishing, consistently with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority. [*Petipren v Jaskowski*, 494 Mich 190, 204; 833 NW2d 247 (2013).]

This Court has previously determined that multiple individuals can be simultaneously entitled to immunity under MCL 691.1407(5). See *Armstrong v Ypsilanti Twp*, 248 Mich App 573, 592-596; 640 NW2d 321 (2001) (finding governmental immunity, pursuant to MCL 691.1407(5), protected all five township board members from liability). This Court has also determined that both the highest elected and highest appointed official can simultaneously be entitled to absolute governmental immunity when acting within the scope of their authority. See *Nalepa v Plymouth-Canton Cmty Sch Dist*, 207 Mich App 580, 587; 525 NW2d 897 (1994), aff'd in result only sub nom *Nalepa v Encyclopedia Britannica Ed Corp*, 450 Mich 934; 548 NW2d 625 (1995) (finding both the school board members and the superintendent were entitled to absolute governmental immunity pursuant to MCL 691.1407(5)). Accordingly, whether Gregg was entitled to governmental immunity did not depend upon whether the members of the Board of Road Commission were entitled to governmental immunity. Instead, Gregg was entitled to governmental immunity if (1) he was a judge, legislator, or the elective or highest

appointive executive official of a level of government and (2) he acted within the scope of his authority. *Petipren*, 494 Mich at 204.

As to the first element, whether an entity is a "level of government" depends on "whether the entity shares aspects of governance with other political subdivisions, such as the power to levy taxes, the power to make decisions having a wide effect on the members of a community, or the power of eminent domain," or possesses "broad-based jurisdiction or extensive authority similar to that of a judge or legislator." *Grahovac v Munising Twp*, 263 Mich App 589, 593; 689 NW2d 498 (2004) (citations omitted). The Road Commission has the power of eminent domain for highways, and thus, has a power of governance and qualifies as a level of government. *Id*. at 594, citing MCL 213.151 and MCL 213.171. Further, it is undisputed that Gregg, as the Managing Director of the Road Commission, was the highest appointive executive official of the Road Commission and was at all times relevant to this case acting within the scope of his authority as managing director. Accordingly, Gregg was entitled to absolute governmental immunity pursuant to MCL 691.1407(5), and the trial court did not err in granting his motion for summary disposition on that basis.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood