*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBIN SILAS and ERIN SILAS,

       Plaintiffs-Appellants,

v

PAM REILLY, SHAVON ROMITA, and
CROSSING PATHS,

       Defendants-Appellees.

UNPUBLISHED
October 19, 2023

No. 363947
Oakland Circuit Court
LC No. 2022-191966-NZ

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Robin Silas shared custody of two children with a nonparty-parent who moved to modify the custody and parenting time of those two children. The family court overseeing the custody dispute appointed a guardian ad litem to represent the children, and she recommended that full custody be given to the nonparty-parent after statements made by defendants alleged that plaintiffs were mistreating the children. Robin lost custody of the two children, and plaintiffs sued defendants for defamation and malicious prosecution. The trial court granted defendants summary disposition. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

During the underlying custody litigation, the family court appointed the guardian ad litem to represent the interests of the two children, and the family court entered an order giving the guardian ad litem the following authority:

> The [guardian ad litem] at her sole discretion, shall have the authority to interview all members of the parties' immediate family, extended family and/or other individuals residing in the parties' homes, as well as, interview any other individuals who the [guardian ad litem] deems might have relevant information or involvement with the children.

-1-

* * *

The [guardian ad litem] shall have the discretion to communicate with any party, who she determines she may require information from to further the best interests of the children or to assure the safety and well-being of the children, including the Court, either or both attorneys, either or both parents, therapists and medical providers who are currently or were previously involved with the parties and/or the children, and any other party to give the [guardian ad litem] a full opportunity to explore all pertinent information and protect the children.

The guardian ad litem began an investigation to gather the information she required to make a recommendation regarding the best-interests of the children. As part of this investigation, the guardian ad litem interviewed Pam Reilly, who was the children's one-time nanny, as well as Shavon Romita who was employed as a therapist through Crossing Paths and provided therapy to the children and Erin Silas at different times. After her investigation, the guardian ad litem recommended that the nonparty-parent have full custody of the children, and she made a Children's Protective Services report regarding the statements she received. Robin then lost custody of the children.

Plaintiffs claimed that defendants had defamed them, and that Reilly had engaged in malicious prosecution, regarding the statements they made to the guardian ad litem. Plaintiffs alleged that Reilly told the guardian ad litem false statements about how the children were mistreated when they were in plaintiffs' care, and that Reilly made these allegedly false statements in retaliation after being fired as the children's nanny. Additionally, plaintiffs alleged that Romita made false and defamatory statements about Erin, including that "Erin Silas, made up illnesses and medical conditions of the minor children." Plaintiffs also alleged that Romita was accused of potential criminal misconduct for her statements.

At the onset of the case, all defendants moved for summary disposition under MCR 2.116(C)(7) asserting that they had immunity under MCL 722.625 or otherwise were entitled to quasi-judicial immunity. Romita and Crossing Paths also moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiffs had not alleged that Romita or Crossing Paths had made any defamatory statements about Robin.

The trial court granted defendants summary disposition under MCR 2.116(C)(7), holding that all defendants were entitled to immunity under MCL 722.625 as well as quasi-judicial immunity. Further, the trial court granted Reilly summary disposition, under MCR 2.116(C)(7), on plaintiffs' malicious prosecution claim because "no evidence has been presented with Plaintiffs' complaint save a theory of postemployment termination retaliation, or that a supported allegation has been made that Defendant Reilly acted for vexation or trouble or maliciously." The trial court also granted Romita and Crossing Paths summary disposition under MCR 2.116(C)(8) for plaintiffs' claim that Romita defamed Erin because the record reflected that "Romita and Crossing Paths only made statements concerning Plaintiff Robin Silas and did not make any statement to [Children's Protective Services] or the [guardian ad litem] regarding Plaintiff Erin Silas."

Plaintiffs now appeal.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (cleaned up). In reviewing a trial court's decision under MCR 2.116(C)(7), we consider the record evidence to determine whether the defendant is entitled to immunity. *Poppen v Tovey*, 256 Mich App 351, 353-354; 664 NW2d 269 (2003). In contrast, "[a] motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998) (cleaned up).

### A. IMMUNITY UNDER MCL 722.625

Plaintiffs first argue that the trial court erred by granting defendants summary disposition for immunity under MCL 722.625. This issue involves statutory interpretation, which this Court reviews de novo. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent." *Wiesner v Washtenaw County Community Mental Health*, 340 Mich App 572, 580; 986 NW2d 629 (2022) (cleaned up).

"The Child Protection Law, MCL 722.621 *et seq*., outlines various requirements regarding the reporting and investigation of suspected child abuse. One section of the statute grants immunity from tort liability in relation to such reporting and investigation." *Lavey v Mills*, 248 Mich App 244, 251; 639 NW2d 261 (2001). MCL 722.625 provides, in relevant part:

> A person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action. A person making a report or assisting in any other requirement of this act is presumed to have acted in good faith.

This Court has characterized MCL 722.625 as "an immunity provision," in which "the grant of immunity applies only to acts required by the Child Protection Law," specifically the acts of "reporting, cooperating, or assisting as required by the act." *Lee v Detroit Med Ctr*, 285 Mich App 51, 63-64; 775 NW2d 326 (2009). Further, this Court held in *People v Mullins*, 322 Mich App 151, 161; 911 NW2d 201 (2017), that "under this act" in a related section of the Child Protection Law means "the making of a specific report to [Children's Protective Services] as authorized by the Child Protection Law, as opposed to some other kind of report not involving abuse or neglect of a child or made to some person or entity other than [Children's Protective Services] or law enforcement."

Plaintiffs' complaint alleges that defendants made false and defamatory statements to the guardian ad litem during the guardian ad litem's investigation, not during a Children's Protective Services investigation. Even though the guardian ad litem used the results of that investigation as the basis for a report to Children's Protective Services, defendants were not "reporting, cooperating, or assisting" as required by, or under, the Child Protection Law.

Thus, defendants are not entitled to immunity under MCL 722.625, and the trial court erred when granting defendants summary disposition on this basis.

## B. QUASI-JUDICIAL IMMUNITY

Next, plaintiffs argue that the trial court erred by granting defendants summary disposition on the basis of quasi-judicial immunity. "Quasi-judicial immunity is an extension of absolute judicial immunity to non-judicial officers." *Serven v Health Quest Chiropractic, Inc*, 319 Mich App 245, 254; 900 NW2d 671 (2017) (cleaned up). "The doctrine of quasi-judicial immunity as developed by the common law has at least two somewhat distinct branches." *Forton v St Clair County Pub Guardian*, 339 Mich App 73, 82; 981 NW2d 103 (2021) (cleaned up). "One branch focuses on the nature of the job-related duties, roles, or functions of the person claiming immunity, and one branch focuses on the fact that the person claiming immunity made statements or submissions in an underlying judicial proceeding." *Id*. at 82-83 (cleaned up).

In this case, defendants were not carrying out the job-related duties, roles, or functions of our judiciary. Instead, defendants were providing statements to the guardian ad litem for the purpose of the guardian ad litem's investigation under a court's order. In a general sense, defendants were acting as a type of "witness." In that regard, our Supreme Court has held:

> Witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function. Witnesses who are an integral part of the judicial process are wholly immune from liability for the consequences of their testimony or related evaluations. Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. Falsity or malice on the part of the witness does not abrogate the privilege. The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation.

> * * *

> Witness immunity is also grounded in the need of the judicial system for testimony from witnesses who, taking their oaths, are free of concern that they themselves will be targeted by the loser for further limitation. [*Maiden v Rozwood*, 461 Mich 109, 134-135; 597 NW2d 817 (1999) (cleaned up).]

This Court has extended quasi-judicial immunity to some other participants in court proceedings. See *Diehl v Danuloff*, 242 Mich App 120, 128-133; 618 NW2d 83 (2000) (extending quasi-judicial immunity to psychologists appointed by a court to perform custody evaluations). In those instances, however, this Court extended quasi-judicial immunity to participants who were acting under a court order. In this case, defendants were not providing their statements to the guardian ad litem under oath or court order. Defendants were under no obligation to speak with the guardian ad litem, and their statements were not submissions in the underlying judicial

-4-

proceeding unless the guardian ad litem later introduced those statements as part of her investigation.

Therefore, the trial court erred when it granted summary disposition to defendants under quasi-judicial immunity because defendants were neither performing a judicial function or making statements in an underlying judicial proceeding.

## C. PLAINTIFFS' OTHER ISSUES ON APPEAL

Lastly, plaintiffs argue that the trial court erred by dismissing plaintiffs' malicious prosecution claim against Reilly under MCR 2.116(C)(7), and it also erred by dismissing Erin's claim for defamation against Romita and Crossing Paths under MCR 2.116(C)(8).

The trial court held that "no evidence has been presented with Plaintiffs' complaint save a theory of postemployment termination retaliation, or that a supported allegation has been made that Defendant Reilly acted for vexation or trouble or maliciously," and it granted Reilly summary disposition under MCR 2.116(C)(7) for plaintiffs' malicious prosecution claim.

A motion for summary disposition under MCR 2.116(C)(7) may be based on "[e]ntry of judgment, dismissal of the action, or other relief" that is "appropriate because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." MCR 2.116(C)(7).

The enumerated reasons for summary disposition under MCR 2.116(C)(7) do not include the factual nature of the allegation. Generally, when a trial court looks beyond the pleadings in determining summary disposition, this Court will treat the motion as having been granted under MCR 2.116(C)(10). See *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000). Even though this Court may review a trial court's grant of summary disposition under a different subrule than was cited by the trial court, see *Smith v Kowalski*, 223 Mich App 610, 612 n 2; 567 NW2d 463 (1997), discovery had not yet commenced in the case and summary disposition under MCR 2.116(C)(10) was premature. Moreover, plaintiffs may have factual bases which create a genuine issue of material fact regarding whether Reilly acted vexatiously or maliciously.

Plaintiffs further argue that the trial court erred when it dismissed plaintiffs' claim that Romita had defamed Erin under MCR 2.116(C)(8). Even though Romita and Crossing Paths argue that the trial court order contains a typographical error in which the trial court mistakenly referred to Erin when dismissing the claims under MCR 2.116(C)(8) and not Robin, it is well established that a court speaks through its written order. *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977).

To establish a claim of defamation, plaintiffs must prove the following four elements: (1) "a false and defamatory statement concerning the plaintiff," (2) "an unprivileged communication to a third party," (3) "fault amounting to at least negligence on the part of the publisher," and (4) "either actionability of the statement irrespective of special harm or the existence of a special harm

caused by publication." *Rouch v Enquirer & News of Battle Creek Michigan (After Remand)*, 440 Mich 238, 251; 487 NW2d 205 (1992).

Plaintiffs' complaint specifically alleged that Romita made defamatory statements about Erin, including the statement that "Erin Silas, made up illnesses and medical conditions of the minor children." Romita made that statement to the guardian ad litem, which allegedly led to public ridicule as well as a loss in parenting time after the guardian ad litem acted on that statement.

Therefore, under MCR 2.116(C)(8), plaintiffs alleged a claim upon with relief could be granted, and the trial court erred when it granted Romita and Crossing Paths summary disposition under that subrule.

## III. CONCLUSION

The trial court erred when it determined that defendants were granted immunity by the Children's Protection Law because defendants were not making their statements under that act. Similarly, the trial court erred when it found that defendants were entitled to quasi-judicial immunity because defendants were neither performing a judicial function nor making statements in an underlying judicial proceeding. Lastly, the trial court also erred when it dismissed plaintiffs' claims regarding malicious prosecution and Romita's defamation of Erin because the cited court rules did not support summary disposition of those claims. We take no position whether some other subrule or theory of defense might warrant dismissal in favor of defendants, and the parties are free to move for summary disposition on some or all of plaintiffs' claims consistent with this opinion.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle