*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF SHAUN M. TSCHIRHART, by
DEBORAH TSCHIRHART, Personal
Representative,

        Plaintiff-Appellee,

v

CITY OF TROY, ALEXANDER YARBROUGH,
NICHOLAS YARBROUGH, MARY ALLEMAN,
and ALEXIS CALHOUN,

        Defendants-Appellants,

and

SUSAN O'CONNOR,

        Defendant.

UNPUBLISHED
December 17, 2019

No. 345411
Oakland Circuit Court
LC No. 2018-165013-NO

ESTATE OF SHAUN M. TSCHIRHART, by
DEBORAH TSCHIRHART, Personal
Representative,

        Plaintiff-Appellee,

v

CITY OF TROY, ALEXANDER YARBROUGH,
NICHOLAS YARBROUGH, MARY ALLEMAN,
and ALEXIS CALHOUN,

        Defendants,

and

No. 345715
Oakland Circuit Court
LC No. 2018-165013-NO

-1-

SUSAN O'CONNOR,

      Defendant-Appellant.

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's orders denying their motions for summary disposition pursuant under MCR 2.116(C)(7) (governmental immunity) and (C)(8) (failure to state a claim for relief) in this wrongful-death action arising from a drowning death in a public swimming pool. We reverse and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

This action arises from the drowning death of plaintiff's 32-year-old disabled son in a swimming pool at the Troy Community Center, a facility operated by defendant city of Troy. The decedent, who had a history of epilepsy, was a participant in the Friendship Club, a recreational program for disabled adults provided by the city of Troy. He was participating in a Friendship Club swimming outing when he drowned. Defendants Alexander Yarbrough and Nicholas Yarbrough were lifeguards on duty at the time of the decedent's death. Defendant Alexis Calhoun was the pool manager. Defendants Susan O'Connor and Mary Alleman were employed as Friendship Club attendants.

Plaintiff's complaint alleges that the decedent submerged himself in the pool and likely suffered an epileptic seizure. He was under water for approximately 50 seconds before anyone noticed that he was in danger. When Alleman saw that the decedent was in danger, she poked him with a Styrofoam tube, but he failed to respond. Alleman then entered the water and the decedent was eventually removed from the pool. According to plaintiff, approximately 90 seconds elapsed before defendants Alexander Yarbrough, Nicholas Yarbrough, and Alexis Calhoun initiated cardiopulmonary resuscitation (CPR). The decedent was transported by ambulance to the hospital where he was pronounced dead. The medical examiner determined that the decedent's cause of death was "drowning due to epileptic seizures disorder."

Plaintiff brought this action for wrongful death, alleging that defendants were grossly negligent in failing to supervise the decedent and timely intervene when he failed to resurface. Defendants city of Troy, the Yarbroughs, Alleman, and Calhoun moved for summary disposition under MCR 2.116(C)(7) and (8), alleging that they were entitled to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, and that plaintiff failed to plead facts in avoidance of immunity. Defendant O'Connor filed a separate motion for summary disposition under subrule (C)(7). Plaintiff argued in response that summary disposition was premature because discovery had not been conducted. The trial court agreed and denied defendants' motions. Defendants City of Troy, the Yarbroughs, Alleman, and Calhoun appeal as of right in Docket No. 345411, and defendant O'Connor appeals as of right in Docket No. 345715.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Pew v Mich State Univ,* 307 Mich App 328, 331; 859 NW2d 246 (2014). "A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law." *Id*. at 331-332. "The moving party may support its motion with affidavits, depositions, admissions, or other documentary evidence." *Id.* at 332, citing MCR 2.116(G)(5) and (6). "If reasonable minds could not differ on the legal effects of the facts, whether governmental immunity bars a plaintiff's claim is a question of law." *Pew,* 307 Mich App at 332.

Motions for summary disposition under MCR 2.116(C)(8) test "the legal sufficiency of a claim by the pleadings alone." *Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016), quoting *Averill v Dauterman*, 284 Mich App 18, 21; 772 NW2d 797 (2009). A motion under subrule (C)(8) is reviewed "to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. All factual allegations supporting the claim, and any reasonable inference or conclusions that can be drawn from the facts, are accepted as true." *Id*., quoting *Averill*, 284 Mich App at 21.

## III. IMMUNITY FOR CITY OF TROY

We first address defendant city of Troy's argument that it is entitled to governmental immunity regardless of any gross negligence of its employees. Plaintiff concedes this argument on appeal, and we agree with both parties that the city is immune.

MCL 691.1407(1) provides:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

"MCL 691.1407(1) . . . unambiguously provides immunity to a governmental agency without regard to an employee's gross negligence." *Yoches v City of Dearborn*, 320 Mich App 461, 476; 904 NW2d 887 (2017). MCL 691.1408(1) provides that in a civil action for negligence against a governmental employee, "the governmental agency may compromise, settle, and pay the claim before or after the commencement of a civil action." When a judgment for damages is awarded against a governmental employee, "the governmental agency may indemnify the officer, employee, or volunteer or pay, settle, or compromise the judgment." However, MCL 691.1408 "does not require imposition of vicarious liability against a governmental agency for an employee's gross negligence." *Yoches*, 320 Mich App at 477. Accordingly, the city of Troy is correct that it cannot be held liable for any gross negligence of its employees.

## IV. IMMUNITY FOR GOVERNMENTAL EMPLOYEES

Next, we address the allegations of gross negligence on the part of the defendant employees. Again, we conclude that governmental immunity applies.

"To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). Under MCL 691.1407(2), "[g]overnmental employees are immune from liability for injuries they cause during the course of their employment if they are acting or reasonably believe they are acting within the scope of their authority, if they are engaged in the exercise or discharge of a governmental function, and if their conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Love v Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2006). "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "The determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). "To be the proximate cause of an injury, the gross negligence must be 'the one most immediate, efficient, and direct cause' preceding the injury." *Love*, 270 Mich App at 565, quoting *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000).

## A. CAUSATION

First, we conclude that, even assuming arguendo that the defendant employees' conduct constituted gross negligence, it was not the cause of the decedent's death. In *Ray v Swager (On Remand)*, 321 Mich App 755, 758: 909 NW2 917 (2017) (*Ray II*), this Court explained the framework set forth in *Ray v Swager*, 501 Mich 52; 903 NW2d 366 (2017) (*Ray I*), for determining whether an individual's conduct may be considered the cause of an injury for purposes of determining governmental immunity under MCL 691.1407(2)(c). This Court stated:

> The analysis under this framework begins with determining whether the defendant's gross negligence was a cause in fact of the plaintiff's injuries. . . . Provided that a defendant's gross negligence was a factual cause, the court must then consider whether the defendant was a proximate—i.e. legal—cause by addressing foreseeability and whether the defendant may be held legally responsible for his or her conduct. . . . In addition to considering the governmental actor's conduct, it must also be decided whether there are other proximate causes of the injury . . . . Determining if there were other proximate causes requires consideration of whether any other human actor was negligent because "only a human actor's breach of a duty can be a proximate cause." . . . "Nonhuman and natural forces" may bear on the question of foreseeability and intervening causes for purposes of analyzing proximate cause, but they can never be considered the proximate cause of a plaintiff's injuries for purposes of the GTLA. [*Ray II*, 321 Mich App at 759-760 (citations omitted).]

"Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that but for the defendant's actions, the plaintiff's injury would not have occurred. Courts must not conflate these two concepts." *Ray I*, 501 Mich at 63 (quotation marks and citations omitted).

For purposes of reviewing defendants' motion under MCR 2.116(C)(8), we must accept as true the allegations in plaintiff's complaint that the decedent was submerged under the water for approximately 50 seconds before someone noticed his situation and came to his aid, and that CPR efforts were not initiated until approximately 90 seconds after the decedent was removed from the pool. Further, defendants did not present any evidence to contradict these allegations for purposes of their motions under MCR 2.116(C)(7). Defendants argue, however, that plaintiff's theory of factual causation does not and cannot go beyond mere speculation that the decedent would not have died if the governmental employees had intervened sooner than the alleged 50 seconds between the decedent's submersion and removal from the water, and the alleged 90 seconds between his removal and initiation of CPR. Defendants also state that speculation is the only basis for plaintiff's alleged causal connection between the omission of a life jacket or other safety device and the decedent's death.

Defendants rely on *Beals v Michigan*, 497 Mich 363, 366-367; 871 NW2d 5 (2015), a case in which the plaintiff's decedent drowned in a swimming pool at a state residential facility for vocational training for students with disabilities. The decedent, a 19-year-old student at the facility, was an experienced swimmer. *Id*. at 367. The plaintiff alleged that the lifeguard on duty was grossly negligent by failing to prevent the drowning. *Id*. at 368. The lifeguard did not notice that the decedent swam into the deep end and failed to resurface, and there was no evidence that the decedent showed signs of distress. *Id*. at 367. When another student saw the decedent's body at the bottom of the pool, he and other students had to yell more than three times to get the lifeguard's attention. *Id*. The lifeguard pulled the decedent's body from the pool and attempted to resuscitate him. *Id*. at 367.

In a reversal of this court's opinion to the contrary, our Supreme Court concluded that the lifeguard's alleged negligence was not the proximate cause of the decedent's death, stating:

> Under the facts of this case, Harman's inaction does not constitute the "most immediate, efficient, and direct cause" of Beals's drowning. Harman did not cause Beals to enter the pool and swim to the deep end, an act the accomplished swimmer performed voluntarily, nor did Harman cause Beals to remain submerged in the water, which was undeniably a more direct cause of Beals's death than any inaction on the part of Harman. That we lack the reason for Beals's prolonged submersion in the water does not make that unidentified reason any less the "most immediate, efficient, and direct" cause of his death. Consequently, while Harman's failure to intervene may be counted among the myriad reasons that Beals did not survive this occurrence, it certainly was not "the proximate cause" of his death for purposes of MCL 691.1407(2)(c). [*Beals*, 497 Mich at 373-374.]

In reversing this Court's opinion, the Supreme Court further explained that this Court "appear[ed] to have conflated Harman's alleged breach of duty with the proximate cause of Beal's death," leading to its erroneous conclusion that Harman's "grossly negligent conduct resulted in his failure to notice Beal's distress and respond appropriately." *Id*. at 374. The Supreme Court stated:

-5-

Stated simply, that Harman breached his duty does not necessarily entail that his inaction was the most *direct cause* of Beals's drowning. Indeed, Harman did not *cause* Beals's drowning; he merely failed to observe it happening and to attempt a rescue in response. That we can only speculate as to Beals's survival had Harman timely intervened further supports our conclusion that Harman's conduct was not the proximate cause of Beals's death. [*Id*.]

The Court analogized the case to that of a death by fire, noting:

When a fire is consuming a house, that a prudent firefighter might have slowed or stopped the fire does not automatically transform his failure to do so into the proximate cause of a death by fire. Similarly, if a swimmer accidently drowns, that a prudent lifeguard might have rescued the swimmer from drowning does not automatically transform his failure to do so into the proximate cause of a death by drowning. [*Id*. at 376-377.]

The Court declined to "hypothesize scenarios in which a governmental employee's failure to intervene is so 'immediate, direct, and efficient' to the injury that it breaks the existing causal connection, supersedes any other cause, and becomes 'the one most immediate, efficient, and direct cause' of the injury, [and therefore] reject[ed] the defendant's suggestion that a governmental employee's failure to intervene can *never* constitute the proximate cause of an injury." *Id*. at 377.

In *Ray I*, the Supreme Court clarified its decision in *Beals*. The Court described its analysis in *Beals* as "somewhat opaque," and clarified that *Beals* "is best understood as holding that the lifeguard could not have been 'the proximate cause' of the decedent's drowning because the plaintiff failed to show even a genuine issue of factual causation." *Ray I*, 501 Mich at 70. The Court stated that the plaintiff in *Beals* failed to offer sufficient proof that the lifeguard's breach of a duty was a but-for cause of the drowning; thus, the causal connection was mere speculation. *Ray I*, 501 Mich at 70-71. The holding in *Beals*, as clarified in *Ray I*, leaves little room for analysis of the factual cause in this case. The Supreme Court's statement that the plaintiff in *Beals* could not demonstrate that "the lifeguard's breach of a duty was a but-for cause of the drowning," *Ray I*, 501 Mich at 70-71, establishes precedent that a lifeguard's delay, even if it constitutes gross negligence, is not a cause in fact of drowning because of the inherent uncertainty of successful rescue.

We note plaintiff's argument that *Beals* is distinguishable from the instant case, in which the number of swimmers in the pool was approximately the same as the number of lifeguards and attendants. However, the ratio of swimmers to government actors does not establish that, but for the government employees' inaction, the decedent would not have drowned. Plaintiff also argues that defendants knew that the decedent was at risk of seizures. However, the decedent's risk of seizures also does not alter the factual cause analysis. On the contrary, the decedent's alleged seizure increased the uncertainty that he would have survived the drowning incident if defendants acted more quickly.

B.  GROSS NEGLIGENCE

We also conclude that, to the extent that plaintiff's complaint was predicated, not on defendants' failures after the decedent entered the pool, but on their failures to prevent the drowning beforehand, plaintiffs failed to establish gross negligence. As indicated, under MCL 691.1407(2), "[g]overnmental employees are immune from liability for injuries they cause during the course of their employment if they are acting or reasonably believe they are acting within the scope of their authority, if they are engaged in the exercise or discharge of a governmental function, and if their conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Love*, 270 Mich App at 565. "Gross negligence" is defined by the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010).

"[F]or a plaintiff to be successful in a tort action against a governmental employee, the plaintiff must prove both that (1) the governmental employee's conduct demonstrated a substantial lack of concern for whether his conduct would cause injury to the plaintiff, and (2) the alleged misconduct was *the* proximate cause of the plaintiff's injury. *Tarlea v Crabtree*, 263 Mich App 80, 83; 687 NW2d 333 (2004). "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. *Id*. at 90. "[S]aying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness." *Id*. In *Tarlea*, this Court stated:

> Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.
>
> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Id*.]

Plaintiff alleged seven acts or omissions that constituted gross negligence: (1) failure to exercise reasonable care; (2) failure to monitor the decedent in the pool; (3) failure to timely rescue the decedent; (4) failure to equip the decedent with safety equipment; (5) failure to exercise due care in providing life guard services; (6) failure to supervise the pool and observe that the decedent was submerged; and (7) failure to ensure that participants were able to swim. Plaintiff alleges that the decedent's epilepsy and propensity for seizures heightened defendants' duties and aggravated the severity of defendants' alleged breaches of those duties.

Defendants cite *Smith v Kowalski*, 223 Mich App 610; 567 NW2d 463 (1997), in which the plaintiff prison inmate ran at a high speed into a metal window frame while playing football in a courtyard on the prison grounds. He suffered a closed head injury and quadriplegia. *Id*. at

611-612. The plaintiff alleged that prison employees were grossly negligent for failing to enforce safety rules and failing to prevent prisoners from playing football in an unsafe courtyard without safety equipment. *Id*. at 612. This Court held that the plaintiff failed to establish gross negligence. The Court remarked that there was a rule against playing football in the courtyard, that the defendants actively tried to enforce the rule, and that there was no evidence that the defendants knew that a game was taking place. *Id*. at 617.

In the instant case, we do not believe that "an objective observer" watching the events as alleged in plaintiff's complaint "could conclude, reasonably, that the actor[s] simply did not care about the safety or welfare" of the decedent. *Tarlea*, 263 Mich at 90. Failure to provide the decedent with a lifejacket or other safety device does not rise to that level of gross negligence. Plaintiff did not plead facts to support a conclusion that allowing the decedent to swim without a flotation device demonstrated a substantial lack of concern for the decedent's risk of injury. Plaintiff did not plead any unusual circumstances, such as the depth of the pool, warranting use of a lifejacket by an adult swimmer. Plaintiff did not allege that the decedent was unable to swim, or that the decedent's seizures were so frequent that there was a significant likelihood that one would occur while he was in the pool.

## C. AMENDMENT

Plaintiff argues that, if this Court holds that the trial court erred by denying defendants' summary disposition motions, she should be permitted the opportunity to amend her complaint. MCR 2.116(I)(5) provides that "[i]f the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." Because summary disposition was warranted under subrule (C)(7), plaintiff was not entitled as a matter of right to the opportunity to amend her pleadings. The trial court may, however, grant plaintiff leave to amend in accordance with MCR 2.118(A)(2). In this case, it is unclear whether there are other facts that could support a valid claim. Under the circumstances, we believe that remand to provide plaintiff with an opportunity to file an amended complaint is appropriate.

In sum, we conclude that plaintiff's complaint failed to allege sufficient facts that defendants' conduct constituted gross negligence that was a factual cause of the decedent's death. Accordingly, we reverse the trial court's orders denying defendants' motions for summary disposition. However, we remand to afford plaintiff an opportunity to seek leave to amend her complaint under MCR 2.118.

## V. WHETHER SUMMARY DISPOSITION WAS PREMATURE

Lastly, we note the trial court's ruling that summary disposition was premature because discovery had not been conducted. The ruling was erroneous.

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Pew*, 307 Mich App at 331. A trial court's decision regarding discovery is reviewed for an abuse of discretion. *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 478; 608 NW2d 823 (2000). "Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before

discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). In this case, however, defendants did not move for summary disposition under MCR 2.116(C)(10).

Defendants' motions were not based on plaintiff's inability to establish factual support for her claim, but rather on plaintiff's failure to allege sufficient facts to state a claim in avoidance of immunity. "A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity. Placing this burden on the plaintiff relieves the government of the expense of discovery and trial in many cases." *Odom v Wayne Co*, 482 Mich 459, 478-479; 760 NW2d 217 (2008). Accordingly, even though discovery had not been conducted, it was not premature to determine whether plaintiff's complaint sufficiently alleged a claim in avoidance of governmental immunity.

Plaintiff cites MCR 2.116(G), which governs submission of affidavits, depositions, admissions, or other documentary evidence in support of or opposition to a summary disposition motion. Plaintiff implies that summary disposition under subrule (C)(7) requires submission and analysis of documentary evidence. However, there is no prohibition in moving for summary disposition under subrule (C)(7) on the basis of the pleadings alone. MCR 2.116(G)(2) provides that "[e]xcept as to a motion based on subrule (C)(8) or (9), affidavits, depositions, admissions, or other documentary evidence *may* be submitted by a party to support or oppose the grounds in the motion." (Emphasis added.) The use of the term "may" is considered permissive, in contrast to the term "shall," which is considered mandatory. *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). The Supreme Court's statement in *Odom*, 482 Mich at 478-479, that the plaintiff's burden of pleading facts in avoidance of governmental immunity "relieves the government of the expense of discovery and trial," supports the conclusion that summary disposition may be granted under subrule (C)(7) on the basis of the pleadings alone.

## VI. CONCLUSION

As discussed above, our Supreme Court's decisions in *Beals*, 497 Mich 363, and *Ray I*, 501 Mich 52, indicate that a plaintiff claiming gross negligence from a lifeguard's untimely attempt to rescue a drowning victim generally cannot satisfy the causation element because of the uncertainty over whether a quicker rescue would have been successful. However, although these decisions would seem to foreclose any likelihood that plaintiff could successfully allege and establish a viable claim in avoidance of governmental immunity, we have determined that remand to afford plaintiff an opportunity to seek leave to amend her complaint under MCR 2.118 is appropriate.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

-9-